EDWARD WALCOTT, Administrator, v. GEORGE W. PITCHER
and others.

A widow lady, having an estate, real and personal, of upwards $60,000 in value, yielding an income of about $3000 *per annum*, by her will gave to each of the children of her two step-sons a legacy of $1000; to her niece, an annuity, for life, of $300, and to her grandson, an annuity, for life, of $500,—both said annuities, as her will declared, "to be paid by my executor from my estate,"—with power to her executor to pay to her grandson, for his advancement in business, sums of money, in the aggregate not to exceed $8000, and when the advances equalled that sum, his annuity to cease. The will made a like provision by annuity for each of the after-born children of her son, who was a widower, should he marry, and for the advancement in business of his after-born sons, and ordered that the sum of $12,000 should be paid to the widow of her son, if he should marry, and his wife survive him. She then gave to her only son "all the rest and residue of the rents, income, interest and dividends of all my estate, real and personal, during his natural life, to be paid to him as often as once in six months, and after said rents, &c., have accrued and been received by my executor, and not by anticipation." She authorized her executor to change the investments of her estate, real and personal, "and for that purpose, or to raise money for any of the purposes hereinbefore mentioned," to sell and convey any of her estate; and gave all the residue of all her estate, real and personal, to her grandson and any future born children of her son, in fee, equally, as tenants in common, with remainder over to the children of her step-sons, in case her grand-children should die before the age of twenty-one, without issue living at their deaths, "subject, however, to the payments of the legacies and annuities hereinbefore mentioned, and to the payment, as aforesaid, of the rents, income, interest and dividends thereof, to my son during his life;" *Held*, that the annuities, as well as the legacies or sums in gross, were payable out of the *corpus* of the estate, and not out of the income thereof, construing, under the circumstances, the words, "the rest and residue of the rents, &c., of my estate, real and personal," as if they had been, "the income of the rest and residue of my estate, real and personal." *Held, also*, that all taxes, repairs, and expenses of managing the estate, and of collecting the rents and dividends thereof, were to be paid out of the income; but that the general expenses of administration, in settling the estate, were to be paid out of the personalty, if sufficient, and if not, out of the realty.

THIS was a bill in equity, filed by the administrator, with the will annexed, of the late Marcy Pitcher, of Pawtucket, Massachusetts, for the purpose of obtaining a construction of the will of said Marcy, and instructions as to his duty under the same in the payment of legacies and annuities, and other charges incumbent upon the estate of the said Marcy in his hands.

The several parties interested under the will were made defendants to the bill, and the same was submitted to the court,

without argument, upon the bill and answers. From these it appeared, that the testatrix died on the first day of September, 1861, leaving a last will and testament dated the fifth day of May, 1856, which was duly proved by the Court of Probate for Bristol county, in the State of Massachusetts, on the seventh day of January, 1862, and that Henry P. Knight, named in the will as executor of the same, having died prior to the testatrix, the plaintiff was, on the last mentioned day, duly appointed by said Court of Probate, administrator, with the will annexed, upon the estate of the said Marcy Pitcher, and has been duly qualified and acted as such ; that all the debts and funeral expenses of the testatrix, and the one thousand dollars bequeathed by her will to each of the children of Ellis B. Pitcher, and Benjamin L. Pitcher, have been paid out of the personal estate of the testatrix, and that the plaintiff settled his first account of administration with the said Probate Court for Bristol county, on the 6th day of January, 1863 ; when, upon the change of boundary line between the States of Massachusetts and Rhode Island, the town of Pawtucket, Massachusetts, falling within the State of Rhode Island, this and other probate matters relating to the estates of persons once resident in that portion of the county of Bristol which was included within Rhode Island, was, by the joint legislation of both States, transferred to the Court of Probate of the town of Pawtucket, Rhode Island ; that the whole estate of the said Marcy Pitcher, real and personal, now in the hands of the plaintiff, as administrator, is valued at about sixty thousand dollars ; that the real estate is occupied by the son of the testatrix, George W. Pitcher, and that the gross annual income of the personal estate amounts to about three thousand dollars *per annum;* that the annuities given by the will to the niece of the testatrix, Irena W. Whipple, and her grandson, George L. Pitcher, amounting to eight hundred dollars *per annum*, and also the taxes and assessments upon the whole estate have been paid out of the income of the estate ; and the instructions asked, in substance, are, whether the annuities, expenses of the management, and care of the estate, including the compensation of the trustee, and the necessary repairs of the real estate, should be paid by him out of the annual income of the estate, the residue of which is given by the

will to the son of the testatrix, George W. Pitcher, as claimed by the plaintiff, or out the body of the estate, by conversion from time to time, as needed for that purpose, as claimed by the said George W. Pitcher.

The clauses of the will of Marcy Pitcher relating to the questions raised by the bill and answers are as follows :—

" *First.* I give and bequeath to my niece, Irena W. Whipple, an annuity of three hundred dollars, to be paid to her by my executor from my estate, during her life, in equal half-yearly payments, the first of which shall be made in six months after my decease."

The second, third, and fourth clauses of the will dispose of the household furniture of the testatrix, and give a legacy of a thousand dollars to each of the children of her step-sons, Ellis B. Pitcher and Benjamin L. Pitcher, with contingent rights of survivorship.

" *Fifth.* I give and bequeath to my grandson, George Larned Pitcher, son of my son, George W. Pitcher, the sum of five hundred dollars, to be paid by my executor from my estate, in each and every year, during the life of my said son, George W. Pitcher, for the support and education of my said grandson. I hereby authorize my executor, at any time after my said grandson shall have attained the age of twenty-one years, to pay to my said grandson, for his advancement in business, any sum of money not exceeding eight thousand dollars, to be paid at once, or at different times and in separate sums, or not at all, in the discretion of my executor ; and when said payments shall amount to said sum of eight thousand dollars, the payment of the aforesaid annuity to my said grandson shall cease.

" *Sixth.* In case my son, George W. Pitcher, shall marry again, and decease, leaving a widow, I give and bequeath to said widow the sum of twelve thousand dollars for her own use, to be paid to her by my executor from my estate, in six months after the decease of my said son.

" *Seventh.* In case of such future marriage of my son, George W. Pitcher, and if there should be a child or children born of said marriage, I authorize and direct my executor to

make the same annual payments for the support and education of each of said children, as hereinbefore provided in relation to my grandson, George Larned Pitcher; and I also give my executor the same power to make such payments, in his discretion, for the advancement in business of my son, or sons, hereinafter born of such marriage, as is hereinbefore given in relation to the said George Larned Pitcher.

" *Eighth.* I give and bequeath to my son, George W. Pitcher, the rest and residue of the rents, income, interest or dividends of all my estate, real or personal, during his life, for his own use, to be paid to him by my executor, at least as often as once in six months, and after the said rents, income, interest or dividends shall have accrued and been received by my executor, and not by way of anticipation.

" *Ninth.* I hereby authorize my executor, at any time when he may deem it to be necessary or expedient, to change the investment of any of my estate, real or personal; and for that purpose, or to raise money for any of the purposes hereinbefore mentioned, I authorize him to sell and convey any of my said estate, or of the estate in which the proceeds may be invested,— the proceeds of said sales to be held by him for the purposes, and with the powers hereinbefore mentioned in relation to the estate of which I may die seized and possessed.

" *Tenth.* I give, devise and bequeath all the residue of all my estate, real and personal, including that now owned by me and any hereafter acquired by me, and also, the proceeds of any sale or sales made by my executor, in whatever property it may be invested, to my grandson, George Larned Pitcher, and to all the children born of a future marriage of my son, George W. Pitcher, in case he shall marry again, as tenants in common, equally, to them, their heirs and assigns, forever; subject, however, to the payments of the legacies and annuities hereinbefore mentioned, and to the payment, as aforesaid, of the rents, income, interest or dividends thereof, to my son during his life. But in case of the decease of said George Larned Pitcher and of the children of such future marriage of my son, George W. Pitcher, before they shall have respectively attained the age of twenty-one years, and without lawful issue living at the time of their decease, I then

give, devise and bequeath all such residue of all my estate, subject to such payments as aforesaid, in manner following : onehalf thereof to the children of my said step-son, Ellis B. Pitcher, their heirs and assigns forever, and one-half to the children of my said step-son, Benjamin L. Pitcher, their heirs and assigns for-ever.

"*Eleventh.* I hereby revoke all former wills made by me, and appoint Henry P. Knight, of Providence, in the State of Rhode Island, executor of this will."

*James Tillinghast, for the complainant.*

*William H. Potter, for the defendant, George W. Pitcher.*

BRAYTON, J. The first question raised by the respondent, George W. Pitcher, is, whether the annuities which have now become payable, viz., the annuity to Irena W. Pitcher, of $300, and the annuity to George L. Pitcher, of $500, are to be paid out of the capital of the estate, or out of the rents, income, interest and dividends of the same ?

The principal reason, and, indeed, the only reason, urged for requiring the payment of the annuities from the income is, the form of the gift to the said George W., viz. : "I give and bequeath to my son, George W. Pitcher, *all the rest and residue of the rents, income, interest or dividends of all my estate,* real or personal, during his life, for his own use, to be paid to him by my executor, at least as often as once in six months, and after said rents, income, interest or dividends shall have accrued and been received by my executor, and not by way of anticipation." This language implies that the legatee was not to receive all the income of all the estate left by the testatrix, but that something less than the income of all was to be paid over to him; and that the amount of the income was to be diminished by the prior gifts. The first impression given is, that it is to be diminished by payment out of it of all the prior gifts,—this legatee receiving what of it may remain after the prior gifts are satisfied. But some of those prior gifts are legacies of gross sums. Those, now become payable, amount to the sum of $6000. If this sum, in addition to the annuities now payable, amounting to the sum of $800, are payable from income only, three years or thereabouts

must expire before this legatee can receive any portion of the income,—the yearly amount of the income from all the estate being only $3000. The sum to be paid to the son was intended for his maintenance and support, and that it might not be diverted from that purpose, the income is to be collected and received by the executor in the character of a trustee, and paid over to him semi-annually, and not by way of anticipation. If the prior gifts are to be satisfied out of the income, this provision for the support of the son must be, for a time, entirely suspended. But other gifts are provided for. It is also provided, that the executor may advance to the grandson the gross sum of $8000, on his arrival at the age of twenty-one years; and the same provision is made for every other child which the said George W. might thereafter have born to him. At every of these payments, the means of support intended him must be, for a time, again suspended. The purpose of the gift must fail, if these suspensions are allowed. The testatrix could not have intended this.

Can we distinguish between the annuities and the legacies in gross? The implication from the gift of the residue puts them upon the same footing. It may be said, indeed, as Mr. Jarman suggests was implied in the case of *Heneage* v. *Lord Andover*, 3 Y. & J. 360, that annuities, from their nature, are evidently intended to come out of income; and, indeed, we feel that it is most natural that annual payments should be made from annual receipts.

In looking, however, at the annuities provided for, we see, that if this legatee should have other children, (a contingency for which the will provides,) each of those children is to have, for its support and education, an annuity of $500; so that his means of support, if the annuities alone were payable out of the income of the estate, might be reduced to a very meagre sum, if not altogether taken away. Had the mother desired, what certainly would seem to be desirable, that the income provided for the support of this, her only son, should be liable, from year to year, to as little variation in amount as might be, consistently with the payments necessary to be made to the other legatees before directed, she would desire those payments to be made from the estate, from time to time, as the several sums became paya-

ble ; so that, instead of taking the whole income for the time, and wholly suspending his means of support, they should be diminished only, from year to year, in-proportion to, and by means only of, the diminution of the estate from which they were to be derived. The other parts of this will point in that direction.

The testatrix directs that these annuities be paid "by my executor *from my estate*," evidently not contemplating payment from income ; for this language excludes the idea of payment from dividends, rents, or interest. By the ninth clause, the executor is authorized to sell any of the estate, not only to change investment, but in order "to raise money for any of the purposes hereinbefore mentioned." Those purposes were as well to pay annuities as other legacies : the testatrix, evidently, having in contemplation the sale of her estate to raise money for payment of the annuities. After disposing of the income to her son, for his life, the testatrix proceeds, in the next clause, to dispose of the capital of the estate, and gives to the children of this son "all the residue of my estate, real and personal," "subject, however, to the payment of the legacies and annuities hereinbefore mentioned, and to the payment of the rents, income, interest or dividends thereof, to my son during his life." The annuities, as well as the sums in gross, were first to come out of the estate ; then the income, diminished by the diminution of the property out of which it was to arise by payment out of it of the annuities and legacies.

It is quite apparent from the whole of this will, that the maker contemplated that her executor should have the management, care and control of the property, real and personal ; should receive the rents, interest and dividends therefrom during the life of George W. Pitcher, the son ; that he should, from time to time, as occasion required, sell any part of the estate, real or personal, for the purpose of paying annuities and legacies which he was ordered to pay, and which, by the general residuary clause were charged upon all the estate ; and of the annual income, should pay over to the said George W., during his life, as often as once in six months, whatever may then have been actually received by him, that is, the rents, dividends, and interest of the whole estate, so long as the whole remained unsold, and

the income of all the residue which, from time to time, remained unsold, after portions thereof had been disposed of and applied to the payment of the legacies, as they became payable.

The respondent, George W. Pitcher, also claims, that he is entitled to receive the gross income derived from the estate, free from all taxes, repairs, or expenses of managing the estate, or of collecting the rents and dividends. There is nothing to take the case out of the general rule, that the life estate shall bear the current expenses of the estate. Trustees will not be justified in defraying these charges out of the trust fund. *Thurston* v. *Thurston and others*, 6 R. I. Rep. 296, 300; Hill on Trustees, 395, and cases cited; *North American Coal Co.* v. *Dyett*, 7 Paige, 9.

The income in this case, therefore, must be subject to all taxes upon the estate, to necessary repairs, and to all the necessary expenses incurred in the management of the estate, and in collecting the rents, interest and dividends, this legatee to receive the nett income only, after all these expenses are deducted.

The general expenses of administration in settling the estate must be charged, as the statute charges it, upon the estate, to be paid out of the personalty, if it be sufficient, and if not, then out of the realty.