JEREMIAH D. ROMIG, ET AL., APPELLANTS, v. THE WEST
POINT BUTTER AND CHEESE ASSOCIATION, ET AL., AP-
PELLEES.

1. Corporations: CONTRACT: FRAUD. Upon the case stated at
length in the opinion, *held*, that the contract could not be so modi-
fied or changed by them (Neligh, Brown and Crawford), at that
time, and acting in their individual capacities, or under any
delegated power which they or either of them are shown to have
possessed, so as to affect the interests of the creditors and lien-
holders of the West Point Manufacturing Company; and any
combined attempt to affect their interests injuriously on the
part of persons standing in the relation to them borne by the
said Neligh, Brown and Crawford, the law, without regard to
motives, would designate a confederation and conspiracy to
defraud.

2. ———: ———: RESCISSION. That the original contract be-
tween the West Point Butter and Cheese Association, and the
West Point Manufacturing Company, which was consummated
by the acceptance on the part of the Manufacturing Company of
the proposition of the Butter and Cheese Association, the execu-
tion and delivery to the president of the said association of the
coupon bonds and deed of trust provided for in said contract,
and the execution and tender to the said association of the ma-
jority of the stock of the said Manufacturing Company, was
never rescinded or modified, so as to affect the rights or inter-
ests of the creditors or lien holders of the said Manufacturing
Company or of the said John D. Neligh.

3. ———: ———: TRUSTS. The said Benjamin D. Brown, presi-
dent of the defendant association, having accepted the trust in
and by the said deed of trust set forth and expressed, whatever
acts were by him done and performed in and about the buying
of judgments, liens, or other evidences of indebtedness, against
the said Manufacturing Company, or any of its property, buy-
ing tax certificates, or paying taxes on any of its property, the
purchasing in of any of its property at sheriff's, marshal's, or
commissioner's sale, or otherwise, either by himself, his agents,
or attorneys, or any officer, agent, or member of the said West
Point Butter and Cheese Association—will, so far as the rights
and interests of the plaintiffs and cross petitioning defendants
are concerned, be held to have been done in pursuance of the

said trust and for the benefit and protection of the said Manufacturing Company, its rights, and property.

4. ———: ———: ———. As under the terms of the contract between the West Point Butter and Cheese Association, and the West Point Manufacturing Company, it was the duty of the said association, its president and members, to negotiate and pay at par for the said $35,000 of coupon bonds, which were by the said Manufacturing Company delivered to the president of said association and retained by him, they will, so far as the rights and interests of the plaintiffs and cross petitioning defendants are concerned, be deemed and held to have done so, and to have disbursed the moneys by them used in buying the said judgments, liens, tax titles, and property by them or any of them purchased at said judicial and tax sales or otherwise, in trust for, and for the use and benefit of the said Manufacturing Company, and to hold the undisbursed balance of said $35,000 for such use.

5. ———: ———: ———: CONFLICTING RIGHTS AND LIENS. All rights claimed by the said West Point Butter and Cheese Association, or of any officer or member thereof, under or by virtue of any deed, conveyance, or lease, from the West Point Manufacturing Company, or any member, officer, or attorney thereof, or of any county treasurer, sheriff, marshal, or commissioner, for, or on account of any taxes, judgment, or decree, against the West Point Manufacturing Company, or the said John D. Neligh, or the said Catherine B. Neligh, and any and all claim for liens upon any of the property of the said Manufacturing Company for repairs·or betterments, are held and declared to be subject and inferior to, and to in no wise affect injuriously the rights, liens, or interests of the plaintiffs, or cross petitioning defendants, or any or either of them.

THIS was an action brought in the district court for Cuming county, by judgment creditors of John D. Neligh and the West Point Manufacturing Company, for the purpose of subjecting the property and assets of said West Point Manufacturing Co. 'to the payment of their claims; for a determination of the priorities of the respective liens against said property and assets; and for having certain apparent liens against said property and assets, decreed to have been paid. Certain of the defendants answered setting up their judgments, and filed

·cross petitions for relief. The finding below by BARNES, J., was in favor of the Manufacturing Co., the Butter and ·Cheese Association, and others impleaded with those corporations, a decree entered dismissing the petitions of plaintiffs and cross petitioning defendants, who thereupon brought the case here on appeal.

· *John D. Howe, R. F. Stevenson,* and *Uriah Bruner,* for appellants.

*J. C. Crawford,* for appellees.

COBB, J.

·J. C. Crawford, agent of the West Point Manufacturing Company, with full power and authority from said company in its behalf, applied to the West Point Butter and Cheese Association, at its principal office at Middletown, New York, for a loan of $35.000, to be evidenced by the interest bearing coupon bonds of the first named company. The declared object of such loan was to enable the said first named company to pay off its indebtedness, estimated at $30,000, but which it was believed could be bought in at from $15.000 to $25,000, and to give it a working capital for the purpose of operating its mills. After attending two meetings of the Butter and Cheese Association, Mr. Crawford was met by the following counter proposition: "If the West Point Manufacturing Company, or John D. Neligh, will donate to the undersigned West Point Butter and Cheese Association a controlling interest in its stock, it—the West Point Butter and Cheese Association—in consideration thereof, agrees within ninety days from the date of the delivery of a majority of 'said stock, to negotiate a loan for said company of $35,000, bearing ten per cent. Principal payable in two to five years. Loan to be secured by a first mortgage bond on the real estate of said company, and to be negotiated at par. All real property remaining after paying off loan

and making additions or repairs, is to be divided as follows, to-wit : The present stockholders to get two-thirds, and the new stockholders one-third. The profits of the business to be divided equally among all stockholders." Dated, Middletown, Aug. 9, 1878; and signed by the president of said West Point Butter and Cheese Association.

This proposition Mr. Crawford received from the said West Point Butter and Cheese Association, and with it returned to West Point. A meeting of the board of directors of the said West Point Manufacturing Company was immediately called; the said counter proposition of the West Point Butter and Cheese Association laid before the said board of directors ; and resolutions adopted in due form accepting the same, and ordering the officers of said company to make the necessary arrangements to carry the same into effect without delay. At the same meeting a resolution was also duly passed in the following words : " Resolved, that the president and secretary of the West Point Manufacturing Company be and are hereby authorized and directed to issue 35,000 dollars of coupon bonds of said West Point Manufacturing Company, bearing ten per cent interest, payable five years from date thereof. That said company sell said bonds at their par value and apply the proceeds thereof toward the paying of the debts of said company, and the liens against its said property, and the repairing and operating its mills, etc. That the president and secretary are further authorized to execute and deliver a trust deed to secure the payment of said bonds, on the real estate of said company."

The above meeting was held on the 27th day of August, 1878. On the 2nd day of September, following, the president and secretary of the West Point Manufacturing Company executed and delivered the deed of trust of the said company to Benjamin D. Brown, trustee, who was also the president of the West Point Butter and Cheese

Association, to secure the payment of seventy bonds for the sum of five hundred dollars each, with interest coupons attached, etc., therein specifically described. The said deed of trust was also at the same time signed by the said Benjamin D. Brown, in evidence of his acceptance of the said trust. The seventy bonds for five hundred dollars each were also on the same day delivered to the said Benjamin D. Brown, who took the same, as well as the said deed of trust, to the office of the West Point Butter and Cheese Association at Middletown, New York.

It appears from the testimony, that between the last above date and the 21st of October following, the said Benjamin D. Brown was back and forth between West Point, Nebraska, and Middletown, New York, two or three times, remaining about an equal portion of his time at either place. While at West Point he was busy examining the mills, water power, and other property of the West Point Manufacturing company, and looking into its business and affairs. He never called on the president or secretary of the West Point Manufacturing Company for the certificate of stock in said company, or any other evidence of the ownership by the West Point Butter and Cheese Association of a majority of the stock, or any stock of the West Point Manufacturing Company. But the certificate or certificates for said stock were made out to the said West Point Butter and Cheese Association, signed by the president and secretary, and verified by the seal of said West Point Manufacturing Company. There is evidence, which however is contradicted, that said certificates of stock were tendered to said Benjamin D. Brown for and on behalf of the said West Point Butter and Cheese Association by the secretary of the said West Point Manufacturing Company, some time between said 27th day of August and the 21st day of October. But there is no dispute that, on or before the last mentioned date, the said certificates of stock were

in the office of J. C. Crawford for the purpose of delivery to said Benjamin D. Brown as president of said West Point Butter and Cheese Association; that they were then offered to him; and, while he did not manually ac-cept of them, yet they were then, and continued to remain, virtually under his dominion and control.

On the same day, the 21st or 22nd of October, B. D. Brown, for the first time, informed John D. Neligh or any one else, except J. C. Crawford—and he, at this time at least, must be looked upon rather as his legal adviser than as the agent or attorney of the West Point Manu-facturing Company—of his intention not to go on and complete the transaction according to the agreement. And it was at this time, if at all, that the agreement was novated or modified so as to take it out of the terms of the counter proposition of the West Point Butter and Cheese Association, as accepted and acted upon by the West Point Manufacturing Company, so as to allow the West Point Butter and Cheese Association, or B. D. Brown, its president, or any other of its officers or mem-bers, to go on for an indefinite length of time and buy up the claims and liens against the West Point Manufac-turing Company and its real estate, upon the terms and conditions that, if the said West Point Butter and Cheese Association, B. D. Brown, its president, or its other offi-cers or members, or all together, could and would buy up all of said debts, judgments, and liens for an aggregate sum within the said sum of $35,000, then that all of said debts, judgments, and liens should be assigned to the said West Point Manufacturing Company; but if not, then that the said West Point Butter and Cheese Association B. D. Brown, its president, or any other officer or member, buy-ing up any of such debts, judgments, or liens, might hold them against the said West Point Manufacturing Com-pany the same as any other lien holder might; and that in the mean time, the said contract for the loaning of the

said sum of $35,000, the said deed of trust and bonds, should stand indefinitely suspended.

The weight of evidence is to the effect that at this time such a modification of the terms of the contract was made, in so far as the same could be done by the said Neligh, Brown & Crawford, acting in their several individual capacities only. But we are of the opinion that the contract could not be so modified or changed by them .at that time and acting in their individual capacities, or under any delegated power which they, or any of them, are shown to have possessed, so as to affect the interests of the creditors and lien holders of the said West Point Manufacturing Company; and any combined attempt to affect their interests injuriously on the part of persons standing in the relation to them borne by the said Neligh, Brown & Crawford, the law, without regard to motives, would designate a confederation and conspiracy to defraud.

Long before the time of which we are now speaking, Benjamin D. Brown had accepted the trust as trustee under the deed of trust, and on the part of said West Point Butter and Cheese Association had accepted the said deed of trust and the said bonds of thirty-five thousand dollars, and had the said bonds and deed of trust either in the possession of the said West Point Butter and Cheese Association or that of the bank at Middletown, New York. It is claimed on the one part, that about this time it was discovered by the said Benjamin D. Brown that he had been deceived by the representations of the officers and agents of the West Point Manufacturing Company as to the amount of the debts and liens then outstanding against the said West Point Manufacturing Company and its property, and for that reason he rescinded the said contract. Without stopping to inquire whether he had good or sufficient cause for a rescission of the said contract or not, it is very clear from the evidence that he did none of

those things which would amount to a rescission either at law or equity. He released none of the advantages which the contract gave either himself or his association; nor did he do anything toward placing the West Point Manufacturing Company in *statu quo*. It will not be presumed that Neligh and Crawford, whose chief avowed object in all this business was to relieve the West Point Manufacturing Company from the pressure of debt, would have allowed an additional burden of thirty-five thousand dollars of a rescinded indebtedness to stand out in hostile hands against it for a year and better, without protest or an attempt to call it in.

Whatever acts were done and performed by Benjamin D. Brown, after the acceptance of the trust as expressed in and by the trust deed, in and about the buying of judgments, liens, or other evidences of indebtedness against said West Point Manufacturing Company, or any of its property, buying tax certificates, or paying taxes on any of its property, the purchasing in of any of its property at sheriff's, marshal's or commissioner's sale, or otherwise, either by himself, his agents, attorneys, or any officer, agent, or member of the said West Point Butter and Cheese Association—must, so far as the rights and interests of the plaintiffs and cross petitioning defendants are concerned, be held to have been done in pursuance of the said trust, and for the benefit and protection of the said West Point Manufacturing Company, and its rights and property.

It is a well known principle of equity jurisprudence that that which ought to have been done by a person acting in a fiduciary or trust capacity, will, for the purposes of justice and equity, be deemed to have been done. Therefore, as it was the duty of the said B. D. Brown and the said West Point Butter and Cheese Association, its officers and members, to accept, negotiate, and pay for the said $35,000 of coupon bonds, they will, so far as

the rights and interests of the plaintiff and cross pleading defendants are concerned, be deemed to have done so, and to have disbursed the moneys by them used in buying in the said judgments, liens, tax titles, and property by them, or any of them purchased at said judicial and tax sales, in trust for, and for the use and benefit of, the said West Point Manufacturing Company, and to hold the undisbursed balance of said $35,000 for such use.

From the testimony of Mr. Brown, president of the West Point Butter and Cheese Association, it appears that it was never the intention of the said association, or the understanding between it and the West Point Manufacturing Company, that the coupon bonds issued by the latter company and delivered to the said Brown should in any event be sold to outside purchasers, but were to be held by him—as we understand the legal effect of his testimony—partly in his capacity as president of the one company, and partly as trustee of the other, until the deed of trust given to secure them should become the first lien on the property of the West Point Manufacturing Company, when the several members of the West Point Butter and Cheese Association were to take them " according to the ability of the members," and that he, the said president, and trustees, had been ever since the receipt of said bonds and trust deed engaged in buying up the liens against the property of the manufacturing company with the funds of the Butter and Cheese Association, not for the purpose of making the said deed of trust the first lien upon the property described therein, and so perfect the arrangement as originally contemplated, but, as the witness naively puts it, "as an investment the same as any business man might."

During this time, and as a part of the same general plan, the Butter and Cheese Association, or its president, by means of a lease, entered into the possession of the

principal property of the said Manufacturing Company, and are still in possession, and have made extensive and costly improvements thereon, under claim of title thereto in themselves, under tax and judicial sales thereof, notwithstanding their having entered into the possession of the most and principal part of said property under and by virtue of a lease from the said West Point Manufacturing Company. The said Butter and Cheese Association claim to keep an account, not with said Manufacturing Company, but with the "West Point Manufacturing Company Investment Fund", to which it charges the judgments and liens bought in against said property and manufacturing company at their face value, including interest also on the money expended in the improvement of the said property, with the avowed intention on the part of the said Butter and Cheese Association and its officers, to hold the property as its own until the said Manufacturing Company shall pay off the account. Whether so intended or not, the inevitable effect of this is to postpone the rights of the creditors of the Manufacturing Company indefinitely. As to the *bona fide* creditors of said Manufacturing Company, whether holding liens or not, as well as all holders of liens upon the said property, whether dated prior or subsequent to the conveyance thereof from the Nelighs to said Manufacturing Company, they are entitled to have the real estate of the said West Point Manufacturing Company, or so much thereof as is sufficient to pay and satisfy their several and respective liens and judgments, absolutely free and discharged of any and all liens or claims of the said West Point Butter and Cheese Association, or of any officer, attorney or member thereof, by virtue of any lease, lien for repairs, or betterments, or of any sale for taxes, or on account of any judgment, decree, or lien bought in, held or claimed against said West Point Manufacturing Company, John D. Neligh, or Catherine B. Neligh, by the said

West Point Butter and Cheese Association, or any officer, attorney, or member thereof.

The several findings and the decree of the district court are therefore reversed, the petition of the plaintiffs, together with the cross petition of the several cross pleading defendants, are restored and reinstated, and the cause remanded to the district court for further proceedings in accordance with the views expressed in this opinion.

JUDGMENT ACCORDINGLY.