MARK S. CRESSMAN, APPELLANT, v. WILLIAM H. WHITALL, ASSIGNEE OF A. F. BLAIR ET AL., APPELLEE.

1. **Collateral Securities: COLLECTION BY CREDITOR.** Where a debtor places in the hands of his creditor collateral securities to secure the debt owing by him, and which must be collected at expense and cost, if collected at all, the pledgee has the right to proceed to the collection of the securities, and the pledgeor will be held liable for the necessary, customary, and usual costs and expenses of such collection, such cost and expense to be deducted out of the proceeds of the collateral. But he will not be held for the payment of unusual and uncommon expenditures or costs without his consent.

2. ———: ———: **EXPENSES AND COSTS OF COLLECTION.** G. C. made an assignment of a mechanic's lien and account to B. for the purpose of securing to B. the payment of $1,500 to himself and $2,912 to him as trustee for the estate of G. B. soon after made an assignment for the benefit of his creditors to W. W. began proceedings to enforce the mechanic's lien with the knowledge and consent of C. The enforcement of the lien was resisted, and after some years of litigation W. refused to furnish to his attorneys any more money to carry on the litigation, but agreed with them that they might proceed with the litigation at their own expense and costs, and if successful retain as their compensation a sum sufficient to pay their expenses, and compensate them for the risk assumed, but in case of failure, to lose the money advanced and receive no compensation. This contract was made without the knowledge or consent of C. The attorneys proceeded with the cause and were finally successful. *Held,* That the pledged securities were not liable for the increased attorneys' fees caused by such contract.

3. ———: **PAYMENT OF DEBT: RIGHTS OF PLEDGEOR.** After the payment of the debt for which a collateral security is pledged, the pledgeor or his assignee is entitled to the pledged security if any remains.

APPEAL from the district court of Cuming county. Heard below before BARNES, J.

*Lamb, Ricketts & Wilson,* for appellant.

*John D. Howe* and *R. F. Stevenson*, for appellees.

REESE, J.

This is an appeal from a decision and decree of the district court of Cuming county. The first question presented to this court for decision is upon a motion made by appellant for an order incorporating certain papers, recitals, etc., into the bill of exceptions, and which it is claimed the judge of the district court, wherein the cause was tried, wrongfully refused to incorporate therein. The bill of exceptions has been settled and signed by the district judge. Whether rightfully or wrongfully is not for this court to decide. He has acted upon the matter, and his decision under our statute is final so long as it stands unreversed. This court has no jurisdiction or authority to incorporate rejected matter into a bill of exceptions. The motion must therefore be overruled.

A great many exceptions were taken by the plaintiff on the trial in the district court, which are urged with considerable force in this court. But as in our view of the case they become unimportant they will not be noticed, and the case will be disposed of upon its merits.

The action is brought by plaintiff, who is the son and remote assignee of George W. Cressman, who it is alleged was the owner of a certain decree rendered by the circuit court of the United States, enforcing a mechanic's lien against certain property in West Point, and which decree, not being satisfied, was rendered effectual by the decision of this court in *Romig v. The West Point Butter and Cheese Association*, reported in 12 Neb., 567. It appears that plaintiff's father, who was the original owner of the lien, assigned it to one A. F. Blair, as collateral security for a debt owing by him to Blair of something over $1,500, and also to secure a debt of something over $2,900 to the estate of one Gavit. The action to foreclose the lien was

40

brought by Blair, who was seeking to enforce the lien for the purpose of applying the proceeds to the payment of the two claims referred to. Before the foreclosure was completed, Blair became insolvent and assigned his property to Whitall for the benefit of his creditors. Whitall then took charge of the matter of the enforcement of the lien so far as looking after the claim was concerned. The defendants Howe and Stephenson were the attorneys who had charge of the claim in this state, and were to a great extent subject to Whitall and certain attorneys in Philadelphia, who represented the estates of Blair and Gavit, Blair having died soon after his failure and assignment. There seems to be no direct proof that the notes which represented the indebtedness of Cressman to Blair were ever placed in the hands of the assignee of Blair, but by the testimony of George W. Cressman it appears that the notes were transferred to other parties, presumably before the assignment, and had been by the owners reduced to judgments, which do not appear to have been paid. The owners of these judgments are not made parties to this action, and of course their rights, if any, to the security have not been determined in this action.

While the actions growing out of the enforcement of the Cressman claim against the West Point Manufacturing Company were pending, most of which were quite expensive, Howe and Stephenson repeatedly called upon those interested, as appeared by the assignment to Blair, for aid in the way of money in prosecuting the actions. One of these actions was brought to this court on error by Howe and Stephenson, and is reported in 7 Neb., page 146, *Blair and Cressman v. The West Point Manufacturing Company.* The parties in Philadelphia were either unable or unwilling to advance the money necessary to remove prior encumbrances from the property against which the lien had been established, some $2,000, and the property was sold upon the prior liens, and $990 (the surplus) paid

to Howe, Stephenson, and Franse, attorneys, and which was divided between them. Some money was also sent to them to pay costs, etc., but a considerable portion of the money received by Howe and Stephenson was expended in costs and necessary expenses paid out during the litigation. After declining to furnish any money to aid in carrying on the litigation, Whitall and the attorney of the Gavit estate wrote to Howe giving him full authority to pursue such course and engage in such litigation as to him might seem best, but upon the condition that it should be at his risk as to costs, etc., and that if successful, he could deduct from the amount recovered such sum as would cover all expenses and pay him for the risk so assumed, and such attorney fee as he might see proper to charge, the repayment of expenses and his compensation to be contingent upon his success. The letter giving this authority, was written August 9th, 1879. It is pretty clear from the testimony that Cressman was not consulted as to this last authority given Howe, and that he was not aware of it, although one of the attorneys in Philadelphia testified that he was advised fully as to each step taken. It is very clear that he had a general knowledge of the case, and that it was in the hands of attorneys in Nebraska, but no correspondence was had between him and Howe or Stephenson. After a series of litigations extending from 1876 to 1882, and ending with *Romig v. The West Point Butter and Cheese Association, supra*, the lien was finally established, and the amount thereof, near $8,000, was about to be collected, when the plaintiff commenced this action alleging that by the assignment of the lien by his father he was the owner of the fund; that the amount due the Blair estate had been paid; that he was ready to pay the Gavit estate the amount due it; that Whitall had no authority to appear in the Romig case and secure the favorable judgment and decree obtained therein ; that Howe and Stephenson had failed to remit the amount collected by them ; that

Howe and Stephenson have at no time been the attorneys of the plaintiff, but hostile to the interests of himself and his assignor, and had entered into a confederation with the parties in Philadelphia to collect the money and pay the same over to the Philadelphia parties, and for which services the said Howe and Stephenson are to receive large and unreasonable fees to be paid out of the proceeds of said decree; that the plaintiff and his assignor are in no way responsible to the said Howe and Stephenson for any compensation for their services, nor is said decree in any way responsible therefor, notwithstanding said Howe and Stephenson have filed an attorney's lien thereon for the same.

An injunction is asked, and a decree that plaintiff be entitled to all the money arising from the collection of the decree, excepting the amount due the Gavit estate, and that defendants be required to account for moneys received, etc.

Answers were filed by defendants setting up the facts as understood by them, and a trial in the district court resulted in a finding that Whitall had properly and rightfully represented the Gavit and Blair estates in all the litigation referred to, having full authority therefor; that Howe and Stephenson had represented Whitall and the beneficiaries of the trust, and that the sum of $2,800 was due them out of said fund; that the amount due the Gavit estate was $3,732; that the evidence shows that the notes given to Blair by Cressman for $1,500 have not been paid; that Cressman has not shown himself entitled to any of the proceeds of the decree; that there is due the Blair estate $13.36 on book account; that these several sums be paid to the parties entitled thereto or their agents; and that the remainder of the decree, if any, be paid to Whitall, the plaintiff's assignee in the foreclosure proceedings, to be reported by him to the proper court in Pennsylvania.

The questions now presented for decision are, in our opinion, as follows: 1st. Are Howe and Stephenson entitled to anything out of the fund in question for their

services in securing the fund? 2d. If so, is the amount allowed by the district court excessive? 3d. If they are entitled to the amount allowed should it be paid out of that fund before any of the other payments are made, so that the entire charge would fall on plaintiff, or should the charge for attorney's fees be borne equitably by all the beneficiaries of the fund? 4th. Is Whitall entitled to receive the remainder of the money to report to the Pennsylvania court, or is plaintiff entitled to it? 5th. Was the court justified in finding that plaintiff had not shown himself entitled to any of the money due upon the decree?

There is no dispute as to the rights of the Gavit estate except it be upon the question as to whether they should pay a part of the fees due Howe and Stephenson, if any such are due. Neither can there be any reasonable dispute as to the $13.36 awarded the estate of Blair upon book account.

Our attention, then, is first directed to the question as to the rights of Howe and Stephenson. That they have labored long, faithfully, and with fidelity in preserving this fund cannot be questioned. Their employment grew out of the employment of Franse and Stephenson by George W. Cressman, plaintiff's father and assignor. While it is true that Cressman did not know of the final agreement made with them by the representatives of the Gavit and Blair estates, yet it is equally true that he knew that his claim was being litigated in Nebraska by some one, and he assented thereto, and was at all times willing to take the benefit of such labor, and had he taken the trouble to investigate he could easily have learned all about it. But he appears, for some reason or other, to have shown but little interest in the matter while there was so much uncertainty as to results. As soon as there appeared to be no further doubt as to what the outcome would be his interest revived. A court of equity is a poor place for a person to go to "reap where he has not sown," as a general rule.

There is no doubt but that plaintiff should pay at least a part of the expenditure necessary for the protection of his claim, and the district court very properly found that Howe and Stephenson were entitled to compensation from the fund which they had created by their labors. The question of the amount of recovery was for the district court to settle in view of the testimony in the case. A finding and decree for a less amount would not have been disturbed by this. court, yet we cannot say it was excessive. The testimony of many attorneys was taken upon this question. Some fell below, but more of them went above the amount allowed by the court. The testimony of very respectable and honorable members of the bar, of both Douglas and Lancaster counties, was taken, and the order of the court is fully supported by a majority of them. There are perhaps few cases to be found in the judicial records of Nebraska which will show more persistent, hard labor than the one referred to.

The next question is one in which we cannot approve the decree of the district court. We recognize the doctrine contended for by defendants, that the holder of a collateral security has the right to enforce its collection, and from the proceeds deduct the necessary expense of collection, as being the general rule in such cases. And had there been no such extraordinary expenditures necessary as in this case, the same rule would have been properly applied here. But, as we have above stated, the agreement was made with Howe that he should assume all risks, pay all costs and expenses necessary to be paid, and receive as his compensation such sum as he might reasonably charge if successful. In other words his compensation and reimbursement where wholly contingent and dependent upon his success. Under such circumstances it is clear, and must have been so to the parties making the contract, that the attorney's fees would be greatly increased by such contract. The contract in the abstract was lawful, and not against

the policy of the law when made with reference to one's own property. But the agreement appears to have been made by the pledgees without any reference to the wishes of the pledgeor. He had the right to expect that such contracts and expenditures would be made as are usually made in such cases, and for those he would be bound. But he could not be held to such an agreement without his consent unless it could be shown that the expenditure was necessary and he was so situated as to make it impracticable for him to be consulted or his consent obtained. The proof shows that he was, during all the time, a resident of the community, and not far from Philadelphia, where the representatives of the estates named were, and he could have been consulted as to the propriety of making the agreement. This is not shown to have been done. The testimony of the experts is that a reasonable contingent fee in such a case as the one in question would be from fifty to sixty per cent. The court allowed about forty. A contingent fee is shown to be about double the usual charges when not contingent. Therefore that part of the fund which goes to the Gavit estate and the Blair estate is chargeable with such proportion of the fee as would equal twenty per cent of the amount awarded them, which would be for the Gavit estate $746, and for the Blair estate $300. But the testimony shows that the notes given to Blair were, perhaps, transferred prior to the assignment by Blair. If the surety was transferred with the notes the transferees are entitled to the benefit of the surety. If not they may not be. It will then be necessary for further proof to be taken upon that question, and the fund, less the attorney's fees, must be held until that question is settled. If the holders of those notes and judgments are entitled to the remaining $1,200 it must be paid to them or their agents, if not it rightfully belongs to the plaintiff. As they are not parties to this action no order can be made affecting their rights until they are made parties, and for

that purpose they must yet be brought in. The order will be that the money which would have gone to the Blair estate upon the collateral held by it to secure the $1,500 be held until ninety days after the filing of proof of service of notice upon the holders of the indebtedness to Blair secured by the assignment to him to appear in the district court and maintain their right thereto, or until it be shown that such indebtedness is paid, and if claimed the issue must be tried. If not claimed at the expiration of said time it must be paid to plaintiff. It follows that Whitall, as the direct representative of the Blair estate, is only entitled to $13.36, unless it be shown that said estate is still the holder of the $1,500 indebtedness secured by the assignment by Cressman to Blair. That the sum of $2,800 is to be paid to Howe and Stephenson, and the money found due the Gavit estate, less the deduction of $746, is to be paid to the agent or attorney authorized to receipt therefor. That $1,200 is to be held for further proof of ownership, and that the remainder is to be paid to plaintiff (together with the $1,200) if not awarded to the estate of Blair or his assignees.

The decree of the district court is reversed so far as it relates to the disposition of the fund referred to, and the cause is remanded with instructions that a decree be entered in accordance with the views herein expressed.

DECREE ACCORDINGLY.

THE other judges concur.