J. W. AULD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12169. Promulgated October 24, 1928.

*George B. Thummell, Esq.*, for the petitioner.
*P. M. Clark, Esq.*, for the respondent.

## OPINION.

Lansdon: The only question here is whether the amount of $6,000 paid by the petitioner as annuities under the terms of the will under which he was executor and trustee was taxable income to him in each of the taxable years. The respondent contends that, as the will makes no specific provision for the payment of the annuities from the income of the estate, such payments may not be deducted from the gross income of the petitioner and, presumably, must be regarded as gifts by him to the annuitants named in the will.

When payments are to be made from time to time out of the assets of an estate, the general rule of law is that the income only shall be used unless it is the clear intention of the testator that the corpus or the corpus and the income shall be drawn upon to meet them, the intent being to preserve the corpus for the purpose of producing more income. In the instant case the will does not provide whether the annuities in question shall be paid from income or corpus, but directs only that "the said monthly payments shall be made by my executors during the course of administration, and, afterwards, by my trustees aforesaid."

In the case of *Walcott* v. *Pitcher*, 7 R. I. 555, the Supreme Court of Rhode Island said:

Annuities, from their nature, are evidently intended to come out of income, it being most natural that annual payments should be made from annual receipts.

The Supreme Court of Massachusetts takes a similar view of the law in *Hammond* v. *Hammond*, 169 Mass. 82; 47 N. E. 535, in which it said:

Even if there were no express provision in regard to payment, the division of the legacies to each of his children into five equal parts, one to be paid in each year, would be an indication that they were to be paid from income, rather than from the principal of his estate. In *Cummings* v. *Cummings*, 146 Mass. 501, 16 N. E. 401, it was said that "the very nature of an annuity suggests, when those charged with the payment of it have in their hands a fund producing income sufficient to pay it, that the payment should be made from the income, and not from the principal."

To the same effect also is the holding of the Supreme Court of North Carolina, in *Ewing* v. *Ewing*, 115 N. C. 366, in deciding a controversy resulting from the direction of a testator that the executor of his estate should pay his widow $300 annually during her life, without indicating the source from which such payments were to be made.

Inasmuch as the Commissioner disallowed the deductions in controversy solely on the ground that the will makes no provision for the payment of the annuities from the income of the residuary estate, it would seem that the cases cited above conclusively indicate that the deficiency here was erroneously determined. The Nebraska Code is derived directly from that of Massachusetts and it follows, we think, that Massachusetts decisions should have great weight in Nebraska. It is pertinent, if not substantially material, however, that we discuss the duties of this petitioner under the terms of the will and the obligations which devolved upon him, if any, when he took title to the residuary estate in conformity with decrees of distribution made by the probate court.

The petitioner, as executor and trustee, took the testator's estate burdened with all the obligations created by the will. It was and is his duty to effect all the purposes of the will, among which was the payment of the annuities here involved. In our opinion it is not material that no specific portion of the estate was earmarked and set apart as a trust fund for the payment of the annuities from the income thereof. As was said by the Supreme Court of Nebraska in *Romig* v. *West Point Butter Co.*, 12 Neb. 567; 11 N. W. 884:

It is a well-known principle of equity jurisprudence that that which ought to have been done by a person acting in a fiduciary or trust capacity will, for the purposes of justice and equity, be deemed to have been done. * * *

Also, in *Stitzer* v. *Whittaker* (Neb.), 91 N. W. 713, the same court said:

A trustee may do, without a decree or order of court, that which the court would order or decree him to do on a showing made.

It was within the power of the petitioner as executor either to set apart sufficient property to provide for the payments required by the terms of the will or to convert a portion of the estate into annuities purchased for the benefit of the legatees. As he did neither, we think it follows that as trustee he took the entire estate impressed with a trust for the benefit of the annuitants under the will.

In this case the will creates a trust, if not by its express terms at least by implication. The petitioner by absolute devise is made the residuary legatee, and we think this was subject to all the obligations created by that instrument. This conclusion is supported by Perry on Trusts, sec. 93, in the following language:

But if any words in the will itself clearly qualify an absolute devise in the will, and show the testator's intent that others should share the property, the devisee holds in trust.

It is clear that the petitioner took the property as trustee subject to the obligation of accomplishing the purposes of the testator. The decree of the probate court neither lifted this obligation nor changed the status of the property in so far as it was impressed with a trust under the terms of the will, since that court was without equitable jurisdiction and could not administer over trust estates. In *Andersen* v. *Andersen*, 69 Neb. 565; 96 N. W. 276, the Supreme Court of Nebraska said:

The county court has jurisdiction to construe wills for the purposes of the administration and settlement of estates. But the construction of a will in such a case is for the information and benefit of the executor or administrator only, in order to advise him what course to pursue. It will protect him from any charge of maladministration of the estate, but it adjudicates nothing beyond his rights and liabilities in the execution of his office. Controversies between adverse claimants under the devise will not be affected thereby.

A careful scrutiny of the decrees of distribution indicates that the probate court expressly recognizes the existence of the trust since it says " all devises and all legacies and gifts of money mentioned in said will have been by said executor assigned, transferred and delivered to the beneficiaries and trustee entitled by the terms of the will to have and receive the same." From this language it is apparent that the probate court respected its jurisdictional limitations and dealt with the petitioner only as an executor who was there to prove his discharge of his duties as such and receive the approval of the court therefor.

The second finding of fact of the first decree of distribution recites that the executor, being also the residuary legatee, had given the bond provided for in section 1328, Revised Statutes of Nebraska, for 1913, that such bond has been approved and is in full force and virtue. The statutory provision requiring the bond so mentioned is as follows:

BOND AS RESIDUARY LEGATEE. If, however, the executor shall be a residuary legatee, instead of the bond described in the preceding section he may give a bond in such sum and with such sureties as the court may direct, with a condition only to pay all the debts and legacies of the testator, and in such case he shall not be required to return an inventory.

The bond filed by the petitioner was merely cumulative security for the payment of all claims against the estate and relieved the executor from the necessity of filing an inventory. It is also authority for the court's order of distribution. In releasing the uninventoried assets to the residuary legatee, the order of the probate court is no more than a quitclaim to such property since the residuary estate is still undetermined and the residuary legatee takes it subject to all unliquidated claims which follow that portion of the estate delivered to the petitioner and are a lien on it until paid. In discussing a somewhat similar situation in *Thompson* v. *Pope's Estate*, 77 Neb. 338; 109 N. W. 498, the Supreme Court of Nebraska said:

\* \* \* The view has been taken that the giving of a bond to pay the debts and legacies by an executor and residuary legatee administers the estate; that the bond is substituted for the assets, and that creditors and legatees thereafter cannot follow the estate, but are confined to a remedy upon the bond \* \* \*. To give the law the effect contended for by the appellee would nullify the sections which make the estate of the deceased liable to the claims of creditors, and would substitute in many cases the uncertainty and vexation of an action upon a bond for the certainty of a recourse to the estate of the deceased remaining undisposed of in the hands of the executor. Such construction to our mind would be unfair to creditors. \* \* \* The giving of a bond to pay the debts and legacies by an executor and residuary legatee therefore is merely cumulative, and adds the security of the bond to the provisions already made for the preservation of the rights of creditors. \* \* \*

In the case of *Wilson* v. *Foss*, 2 Neb. Unof. 428; 89 N. W. 300, the residuary-legatee-executors filed the statutory bond and thereafter sold some land which was a part of the assets of the estate. Later they defaulted in the payment of certain annuities and a suit was brought against the purchaser of the land, in which it was sought to have such land charged with the payment of the annuities. The trial court held for the plaintiffs and in affirming that decision the Supreme Court said:

1. The first question is, did the will make these legacies a charge upon the land? It contained these provisions: " Said legacies to be paid by my executor out of my estate:" and, " I give and devise all the residue of my estate, both real and personal, to my two children, Annie H. Neeley and Richard S. Molony, Jr., to be divided equally between them, and to their heirs, forever." Under these provisions, there can be no doubt that the legacies were made a charge upon the land. " If legacies be given generally, and afterwards the residue of the real and personal estate be given in one mass, the legacies constitute a charge upon the whole residuary estate,—real as well as personal." Beach, Wills § 248; *Turner* v. *Gibb*, 48 N. J. Eq., 526, 22 Atl. 580; *In re Newcomb's Will*, 98 Ia. 175, 67 N. W. 587.

\*        \*        \*        \*        \*        \*        \*

3. The defendants, having taken their title from the devisees named in the will, were bound to take notice of the title of their grantors as disclosed by the record, and cannot now claim any right as innocent purchasers. The decree of the district court fixed these legacies as charges upon the land.

The same court again approved this principle in *Klug* v. *Seegabarth*, 98 Neb. 272; 152 N. W. 385, and in that decision said:

The intention of the testator to make a bequest a charge upon real estate may be inferred, where the bequest is followed by the gift of the residue of the real and personal property in one mass.

Nowhere in either decree of distribution is there any language that can be construed as a discharge of the petitioner from his office and obligations as trustee. The decrees show that while the probate court dealt with the petitioner as executor under the will, it required him to file a bond as residuary legatee and so recognized his obligation to effect the purposes of the will after his receipt of the residuary property. Without the bond the court would have required an inventory of the estate and itself would have made proper provision for the payment of the annuities before vesting title to the residue in the petitioner. The decree enabled the petitioner to take the residuary estate, to sell and make title to any or all the assets therein included, but, as indicated by the bond, freed him from none of his obligations as residuary legatee. Nor, as is held by the decisions cited above, was any of the property which the petitioner so received freed from the trust burden imposed by the terms of the will even after it had passed into the hands of strangers.

The bond did not substitute the personal responsibility of the residuary legatee for the payment of the annuities, but, as the courts have held in the decisions cited *supra*, was only additional security for the payment of such legacies. The law seems clear that the residuary estate is only that part of the property received by the petitioner under the terms of the will and the decree of distribution, which will remain after the obligation to pay the annuities here in question has been lifted by the deaths of the annuitants. Only to the extent of such remainder is there any residuary estate and only to such extent was there authority in the probate court to vest absolute title thereto. The annuities were charges against the property received by the petitioner as administrator and followed it into his hands as trustee, where it remains as a continuing obligation, the payment of which may be enforced by appropriate legal action for the recovery of money had and received. *Kane* v. *Bloodgood*, 7 Johns Ch. 90, 110; or by suit in equity to enforce a trust, *Goble* v. *Swobe*, 64 Neb. 838.

We are of the opinion that so much of the income of the estate received by the petitioner as trustee as was required to pay the annuities here in question was not the income of the petitioner,

1222

and therefore is not taxable to him. Compare the ruling of the Commissioner in I. T. 1488, Cumulative Bulletin I–2, p. 667, and the opinion of the Supreme Court in *Irwin* v. *Gavit*, 268 U. S. 161.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

PHILLIPS, dissenting: The will of this decedent made certain devises and bequests, among them bequests of $250 per month to each of two sisters. One of these sisters·was the mother and the other was the aunt of the petitioner in this proceeding. Petitioner was also the residuary legatee.

The probate court having jurisdiction over the administration of the affairs of the decedent entered a decree in which it found that all devises and legacies had been paid, and adjudged that the residuary estate remaining in the hands of this petitioner be set over to him and his absolute title thereto ratified and confirmed against the claims of all persons whomsoever. No contrary showing having been made, we must assume that the court had jurisdiction to make this decree. This decree states that all legacies have been paid. The record before us is silent as to the manner in which the legacies to the two sisters were paid. It appears that there were devises of real estate involved. Such real estate would have been liable for the payment of these annuities in certain circumstances and it is fair to assume that the parties desired the title cleared by a binding decree that the annuities had been satisfied. In whatever manner satisfaction was made, the decree was sufficient to discharge the residuary estate from any further payment.

Whether annuities were purchased, whether a sum was set aside in trust, whether the legacies were waived, whether a lump-sum payment was made, or whether the legatees accepted the personal obligation of the residuary legatee in discharge of the obligation imposed by the will, we do not know. We find, however, that the court set over the residuary estate to this petitioner as his absolute property, freed of the claims of all persons, that he received the income therefrom and made monthly payments to his aunt and his mother. After the decree became final there was no obligation under the will to make such payments, for he had been discharged from any further obligation thereunder. The payments appear to have been made either voluntarily or by reason of some collateral obligation entered into by him.

In *McClung et al., Executors*, 13 B. T. A. 335, the Board had before it the situation where the residuary legatee, an educational corporation, entered into an agreement with the heirs of the decedent that the will should be admitted to probate and a portion of the residuary

estate paid over to the heirs. The will was admitted to probate. We there held that the residuary estate passed to the educational corporation and was not subject to estate tax. This was upon the ground that the heirs shared in the residuary estate through the agreement with the educational corporation and took nothing under the will. So nearly as can be gathered from the record which we have, the situation here is much the same. The payment in question was not made by the petitioner as executor or as trustee under the will, for the property was no longer held by him as executor or trustee. The payment must have been made for some other reason than an enforceable obligation under the will. It may be that the payments claimed are proper deductions if the facts were all known, but the record before us is too incomplete to permit us to determine whether or not the payments made are deductible. Certainly they are not deductible upon the theory that these were payments which petitioner was required to make as trustee under the will. For these reasons I must dissent.

ARUNDELL and SIEFKIN agree with this dissent.