## James S. P. Hatheway and others v. Edgar Weeks and others.

*Estates of deceased persons: Residuary legatees: Executors: Bonds.* The relative rights, duties and obligations of ordinary executors and of those who are residuary legatees and have filed a bond merely to pay the debts and legacies, are considered.

*Estates of deceased persons: Residuary legatee's bond: Assets: Mistake: Equity jurisprudence.* It is not admissible that one who has given the bond usually required of a residuary legatee (to pay the debts and legacies) and taken the estate and enjoyed it with all the rights of absolute owner, should be allowed, when called upon to pay the legacies, to refuse on the ground that the estate turned out not to be so valuable as he had supposed, and to be released from his bond on surrendering up the assets to be administered in the usual way.

*Residuary legatee's bond: Administration.* And it is nothing to the point that the estate has thus far been honestly and economically administered, and that therefore the legatees have lost nothing; nor does it aid the matter as to those who stand out, that the majority of the legatees assent.

*Residuary legatee's bond: Debts and legacies: Sufficiency of assets.* A residuary legatee's bond is holden for payment of the debts and legacies at all events, and the sufficiency of the assets is one of the risks the residuary legatee voluntarily assumes when he elects to give such bond instead of the ordinary executor's bond; and equity cannot relieve him from that risk. The giving of such bond conclusively admits assets.

*Practice: Injunction bill: Bond to pay judgment: Decree.* Where complainants in an injunction bill have been required to file a bond to pay the judgment which they sought to stay, in case they should fail to invalidate it the final decree dismissing the bill may properly require payment of the judgment.

*Submitted on briefs April 20. Decided June 13.*

Appeal in Chancery from Macomb Circuit.

*Norris & Uhl,* for complainants.

*R. P. & J. B. Eldredge,* for defendants.

MARSTON, J:

Upon the 25th day of October, 1871, Gilbert Hatheway made his last will and testament. By it he made specific bequests to different parties, aggregating in amount one hundred thousand dollars. All the rest, residue and remainder of his property and estate, of every name and nature, real, personal and mixed, he gave, devised and bequeathed to his son James S. P. Hatheway and his heirs forever, he, the said James, to pay all his debts, legacies and bequests. James was by the will designated and appointed sole executor, with full power to sell and dispose of the estate.

On the 26th day of the same month the testator died. The will was admitted to probate December 2, 1871, and the executor named therein required to give bond in the sum of two hundred thousand dollars for the faithful performance of his duty.

In accordance with such order a bond was executed, reciting that said James S. P. was executor and residuary legatee under and by said will. It then proceeded as follows: "Now, therefore, the condition of the present obligation is such that if the above bounden James S. P. Hatheway shall pay all the debts, legacies and costs of administration, due or to become due from said estate, then the before written obligation to be void and of no effect, otherwise to abide and remain in full force, virtue and effect."

This bond was dated December 2d, 1871, and at a session of the probate court held December 14th it was examined and approved, and ordered filed and recorded in the probate office.

Among the bequests made in the will was one of fifteen thousand dollars to the village of New Baltimore. This not having been paid, the village was, by an order of said court, of December 9, 1873, authorized to sue the obligor and his

sureties upon said bond, and in February, 1874, suit was commenced, which resulted in a final judgment being rendered November 18, 1874, in favor of the village, for upwards of seventeen thousand dollars.    This judgment was afterwards, on error to this court, affirmed at the June term, 1875.    Upon the 29th of June, 1875, execution was issued and a levy made upon property of James S. P. Hatheway.

Upon the 15th day of July, 1875, James, for himself and for the relief of the sureties, filed a bill of complaint in the circuit court for the county of Macomb in chancery.    The above facts are all set forth therein and it is also therein alleged that complainants supposed and believed, shortly before and after the giving of said bond, that the value of the testator's estate, both real and personal, was two hundred and two thousand dollars, whereas it turns out that the estate falls far short of this amount; that there was supposed to be some sixty thousand dollars in government bonds deposited, which cannot be found; that another item of eighty thousand dollars, believed to be advanced at twelve and a half per cent. per annum, and also an interest in the profits of the business in which the money was employed, was, after investigation by complainant, acting upon legal advice, compromised at fifty thousand dollars in real and personal property.    Other supposed amounts in much the same condition are set forth, as are also various other matters not necessary to be here referred to.    The relief prayed for is as follows:

1.    That each and all the defendant legatees under the will be enjoined from attempting to enforce payment of their legacies from complainant as executor or by suit upon said bond;

2.    That all further proceedings to enforce the lien by virtue of a levy under the execution be enjoined;

3.    That complainant and his sureties be released and discharged from the penalties and conditions of said bond, and that said judgment and all subsequent proceedings thereunder be vacated, annulled, and held for naught;

4. That said estate may be administered in the probate court, by complainant or some other suitable person, as administrator with the will annexed;

5. That the assets of said estate be marshaled and an account be had with complainant; that all just debts and reasonable disbursements made by him be allowed and adjusted, and that the legatees receive only their *pro rata* share of the estate;

6. That the fifth clause in the will, under which the village claims, be construed;

7. That a guardian *ad litem* be appointed for the minors; and for general relief.

To this bill the village, the judge of probate, and the sheriff, each of whom were made parties defendants, demurred. The demurrer was sustained, and the bill dismissed as to those defendants. An order was on the same day made and entered that complainants do forthwith pay the amount of the judgment rendered in favor of said village.

From the decree dismissing the bill, and this order, complainant Hatheway, for himself and the other complainants, appealed.

This controversy must depend entirely upon the condition and effect of the bond given by the complainant as residuary legatee. The real ground upon which complainant asks to be relieved is, that the assets turn out not to be so large as he, Hatheway, supposed and believed they would be at the time the bond was given. Conceding this, let us look at the position complainant occupied and the advantages he acquired as residuary legatee, and what the result would be in case the relief prayed for is granted. We must bear in mind at the outset, that any rule here laid down, or any conclusion arrived at, must be one applicable in all similar cases arising hereafter.

Our statute provides that when a will shall have been duly proved and allowed, the probate court shall issue letters testamentary thereon, to the person named executor therein, if he is legally competent, and shall accept the trust and

give bond as required by law.—*2 Comp. Laws*, § *4364*.

"Every executor, before he shall enter upon the execution of his trust, and before letters testamentary shall issue, shall give bond to the judge of probate in such reasonable sum as he may direct, with one or more sufficient sureties, with conditions as follows:

"*First*, To make and return to the probate court within three months a true and perfect inventory of all the goods, chattels, rights, credits, and estate of the deceased which shall come to his possession or knowledge, or to the possession of any other person for him;

"*Second*, To administer according to law and to the will of the testator all his goods, chattels, rights, credits and estate, which shall at any time come to his possession, or to the possession of another person for him, and out of the same to pay and discharge all debts, legacies and charges, chargeable on the same, or such dividends thereon as shall be ordered and decreed thereon by the probate court;

"*Third*, To render a true and just account of his administration to the probate court within one year, and at any other time when required by such court;

"*Fourth*, To perform all orders and decrees of the probate court, by the executor to be performed in the premises."
—§ *4365*.

"If, however, the executor shall be residuary legatee, instead of the bond prescribed in the preceding section, he may give a bond in such sum and with such sureties as the court may direct, with a condition only to pay all the debts and legacies of the testator; and in such case he shall not be required to return an inventory."—§ *4366*.

Twenty days are allowed after the probate of the will in which to file either of these bonds.—§ *4367*.

Every executor and administrator, within thirty days after his appointment, is required to make and return into the probate court a true inventory of the real and personal property which shall have come to his possession or knowl-

edge, "excepting only, that an executor who shall be residuary legatee, and shall have given bond to pay all the debts and legacies, as provided by law, shall not be required to return an inventory."—§ *4401*, as amended by *Act No. 136, S. L. 1875, p. 163.*

The executor is chargeable with the whole of the goods, chattels, rights and credits which come into his possession, also with the proceeds of all real estate sold; he shall also account for the personal estate as the same shall have been appraised; he is not to profit by its increase, or suffer loss by its decrease or destruction without his fault; if he sells at less than the appraised value he is not responsible for the loss, if it shall appear to be beneficial to the estate to sell it; he is accountable for loss occasioned by his neglect or unreasonable delay; he is to render his account of his administration, within one year from the time of receiving his letters, and such further accounts of his administration from time to time as shall be required by the court until the whole estate shall be settled; and he may be examined on oath upon any matter relating to his account.—§§ *4481-9.* Before his final account shall be allowed, notice must be given to all persons interested of the time and place of examining and allowing the same.—§ *4494.*

How carefully the statute has attempted to guard the rights of the parties interested, will be seen from the provisions quoted and referred to. The executor or administrator is to make and return to the probate court an inventory of the deceased which comes to his possession or knowledge, or to the possession of any other person for him. This property is appraised by disinterested parties, and he is to account for it at this appraised value, with certain carefully guarded exceptions; he must collect debts due the deceased, and cannot compromise a claim without the approbation of the judge of probate. He has no personal interest in the estate, but holds it in a representative capacity. He cannot be a gainer therefrom, but may be a loser thereby. He is liable to be called to account from time to time. He

may be examined under oath touching his doings, and before his final account can be allowed, all persons interested must have notice.

There is thus a check and guard placed upon him at each step he takes, and this from the beginning. He is bound to take at least ordinary care of the property and render a true account of his doings, under oath, so that the wishes of the testator may be carried out and the parties interested may not be defrauded.

But how different is the case of a residuary legatee. His bond is conditioned only to pay all the debts and legacies of the testator. Having given such a bond, he is not required to make or return any inventory; he is bound to account to no one; he takes the property of the deceased and becomes at once the absolute owner thereof. No checks or guards are provided to prevent the legatees from being defrauded, except the bond; upon this they rely. The residuary legatee may be active and vigilant in hunting up and discovering the property of the deceased, or he may be passive and indolent; and it concerns none of the legatees, nor can they call him to account therefor. He may promptly collect debts due the deceased and reduce the property to his possession, or he may compound with the creditor and give him a discharge upon such terms as to him shall seem best. He is obliged to consult with and please no one. Other distinctions might be referred to. The whole, however, may be summed up in a few words: The executor or administrator is a mere officer of the law; he has no personal interest in the property; his powers are all given him by law, and he is accountable for the due and proper execution of those powers: while the residuary legatee upon giving the bond becomes sole and absolute owner of the estate of the testator, both real, personal and mixed, with all the rights and remedies of an absolute owner, and subject to none of the conditions, restrictions or accountabilities of an executor. If, then, with such powers given him as residuary legatee, he could act in that capacity for·

years, receive and enjoy the estate of the testator during that time, and then, when called upon to pay the legacies, refuse, and come in and ask to be released from the condition of his bond, and that the estate be administered in the usual form, we very much fear that the result to the legatees in most cases would be disastrous. It is not enough to say in answer that in this case the estate thus far has been honestly and economically administered, and that the parties interested are now in no worse position than they would have been had the estate been administered in the usual manner under the directions of the probate court from the beginning, or that a majority of the legatees acquiesce in these proceedings and the relief sought for. This may all be so in this case, and the same claim of honesty and economy would be made in every such case hereafter arising. If disputed, however, it is easy to see the difficulties that would arise after the lapse of one or more years, in proving that certain property might, with due diligence and perseverance, have been discovered; that claims compromised were not doubtful, or if they were, should not have been compromised upon such terms; that personal property was sold upon unfavorable terms and its full value not realized; that owing to delay the value of real estate has declined, or on account of its having been sold prematurely and without necessity therefor, it was needlessly sacrificed. Indeed, the questions, difficulties and dangers which might thus arise are unlimited in variety and extent. We think a court of equity should hesitate before opening the door to such abuses as would almost necessarily arise should the relief prayed for be granted.

There are still other reasons for leading us to the same conclusion. The residuary legatee was not obliged to give this bond. It was optional with him to give it or not. By giving it he obtained very decided advantages, which he could have acquired in no other way. He had ample time to investigate and determine whether he would give this bond or not. Until it was approved and accepted by the probate

court it was subject to his control. Having given it, he is bound by the conditions therein contained, viz.: "to pay all the debts and legacies of the testator;" not conditionally, in case there were found sufficient assets, but absolutely. The giving of the bond conclusively admits assets.—*Colwell v. Alger, 5 Gray, 67.* And in an action at law upon the bond it would be no defense to allege that there were no assets or that they were insufficient. The sufficiency of assets was one of the risks he assumed voluntarily, and from the consequences of such a risk equity does not relieve. It will not relieve from the legal consequences of an agreement thus deliberately entered into. The fact that in assuming the risk the party honestly supposed there would be sufficient assets, and therefore no risk to run, is no answer. It is seldom indeed that parties signing or giving official bonds or becoming security, do so under the belief that they are to become losers thereby. The fact that they, at the time of signing, honestly believe they thereby incur no risk, will not afterwards relieve them from liability. We have carefully considered all the reasons presented by the complainants for relief in this case, but for the reasons above stated, we think there was no error in the decree below sustaining the demurrer.

Complainants having been required to file a bond to enable them to obtain an injunction to stay the proceedings under the judgment, we see no objection to the court ordering and directing the payment of the amount of the judgment at or after the dissolution of the injunction.

The decree must be affirmed, with costs.

The other Justices concurred.