BELLE H. WHEELER v. JAMES S. P. HATHEWAY ET AL.

*Order pro confesso—Claims against estate—Voluntary payments.*

1. A joint defendant in equity who has allowed the bill to be taken as confessed as to himself, is not thereby precluded from bringing an action at law involving the same subject matter, if the bill itself made out no case for relief. And ordinarily a suit in equity is no bar to an action at law. Whether it could be so in any case without a plea in abatement or in bar—*Q.*

2. Where an executor has given bond as residuary legatee, claims against the estate need not be proved in the customary way to make them a valid debt.

3. A claim against an estate need not be proved before commissioners if the executor, as residuary legatee, has conceded his liability for it if the debt should appear to have been assumed by the testator.

4. Money voluntarily paid in the reasonable belief that it is due, and after investigation or the opportunity therefor, and without fraud on the part of the recipient, cannot be recovered back as paid under a misapprehension.

Error to Macomb. (Stevens, J.) June 11.—Sept. 29.

Scire facias. Defendants bring error. Affirmed.

*T. M. Crocker* and *Norris & Uhl* for appellants. An order pro confesso operates as an admission that complainant may take decree: *Griswold v. Fuller* 33 Mich. 271; *Hunt v. Wallis* 6 Paige 377; *Stockton v. Williams* Har. Ch. 241; Jennison's Ch. Pr. 277; Chancery Rule 11; *Hart v. Lindsay* Walk. Ch. 74; as to defense inuring to benefit of defendants who have let the bill be taken as confessed, see *Buchoz v. Lecour* 9 Mich. 234; *Emerson v. Atwater* 12 Mich. 314; *McCabe v. Farnsworth* 27 Mich. 52; as to payments made in mistake of fact—in this case upon facts withheld by the payee, see *Mowatt v. Wright* 1 Wend. 355: 19 Am. Dec. 508; also *McArthur v. Luce* 43 Mich. 437; *Wayne County v. Randall* id. 140; *Tabor v. Mutual Life Ins. Co.* 44 Mich. 325.

*Richard A. Watts* for appellee. Another suit pending is not a bar; it only suspends or abates the second and its pendency

must be shown under plea in abatement: 1 Chit. Pl. 454; *Near v. Mitchell* 23 Mich. 382; *Sullings v. Goodyear Company* 36 Mich. 313; a suit pending in equity cannot abate or bar a suit at law; it can only be stopped, controlled or restrained by a court of equity acting by way of injunction, or some other prohibitory measure; *Evans v. Lingle* 55 Ill. 455; if the first action must have been ineffectual then its pendency will not abate or bar the second, because in such a case the latter is not vexatious: Gould's Pleading, ch. 5 § 126; *Wales v. Jones* 1 Mich. 255; *Blackwood v. Brown* 34 Mich. 4; *Phillips v. Quick* 68 Ill. 324; one who voluntarily pays an obligation which he acknowledges as binding on him is bound by the payment: *Gates v. Shutts* 7 Mich. 133; *Moore v. Det. Loc. Wks.* 14 Mich. 266; *Hull v. Swarthout* 29 Mich. 250; *Mut. Life Ins. Co. v. Wager* 27 Barb. 354; *Morton v. Ostrom* 33 Barb. 256; *Farmers Bk. of Amsterdam v. Blair* 44 Barb. 641; 4 Wait's A. & D. 476-7; the statute of limitations is a personal privilege which may be insisted upon or waived by the debtor: *Brigham v. Fawcett* 42 Mich. 542; *McClatchie v. Durham* 44 Mich. 435; and a defendant who has not pleaded the statute must be deemed to have waived it: *Vore v. Woodford* 29 Ohio St. 250; *Borders v. Murphy* 78 Ill. 87; *Grattan v. Wiggins* 23 Cal. 16; *Boyce v. Christy* 47 Mo. 70; *Brendel v. Strobel* 25 Md. 395; *Steamer Senorita v. Simmonds* 1 Or. 274; *Rankin v. Turney* 2 Bush 555; *Longfellow v. Longfellow* 54 Me. 240; *Parker v. Irvin* 47 Ga. 405; *Taylor v. Courtnay* 15 Neb. 196; *Lockhart v. Fessenich* 58 Wis. 589; *Wilcox v. Kassick* 2 Mich. 165; *Ripley v. Davis* 15 Mich. 75; *Marx v. Hilsendegen* 46 Mich. 337; and plaintiff may recover, even though the proofs show that his cause of action did not arise within the statutory period: *Brickett v. Davis* 21 Pick. 404; *Pegram v. Stoltz* 67 N. C. 144.

COOLEY, C. J. This is scire facias upon a judgment rendered upon the bond of James S. P. Hatheway, given as executor and residuary legatee under the will of Gilbert Hatheway, his father. The purpose of the suit is to recover the balance remaining unpaid of a legacy of ten thousand dollars given by the will to the plaintiff, who was the testator's daughter. The plaintiff obtained judgment, and the defendants bring the case to this Court by writ of error.

After the executor had given bond as residuary legatee for

the payment of debts and legacies under the statute, he discovered, as he claims, that he was mistaken and had been misinformed by the testator in respect to the amount of his estate; that whereas he had been led to suppose that there would be a large surplus above the amount of debts and specific legacies, it was soon made apparent that there would be no surplus at all, and if the condition of the bond was performed by him, he might be loser instead of gainer by accepting the gift made to him subject to the payment of debts and legacies. He therefore filed his bill in equity to have himself and his sureties relieved from the obligations of the bond, and for a decree that the estate should be administered upon in the ordinary way. This Court held it could give him no such relief as he sought. *Hatheway v. Weeks* 34 Mich. 237. Criticism is now made of the decision in that case, that it was made without taking notice of the fact that the testator had made assurances in respect to the amount of his property which the residuary legatee relied upon, and which proved erroneous; but as no fraud was charged the circumstance was very likely passed over by the justice who prepared the opinion as one of no legal significance. And we can hardly think the counsel who argued that case relied very much upon it; for a rehearing was never applied for.

It seems, however, that this plaintiff was a defendant in that equity suit, and allowed the bill to be taken as confessed, while another defendant, the village of New Baltimore, to which a large gift was made by the will, interposed the successful defense. The order pro confesso as to this plaintiff has been suffered to stand to this time, but no decree was ever taken, and nothing further done after the case on its merits had been passed upon. It is now urged on behalf of the defense, that the plaintiff, by allowing the order pro confesso to be entered, admitted the equity of the case then made by the bill, and is now entitled to share in the estate only in accordance with that equity. If, therefore, the estate is insufficient to pay debts and legacies in full, she should have only her just proportion.

This argument is made without any plea setting up, either in abatement or in bar, the suit in equity. Whether it would have been available if any plea had been interposed is on general principles more than doubtful ; a suit in equity not being, as a rule, any bar. or impediment to a suit at law. *Joslin v. Millspaugh* 27 Mich. 517; *McGunn v. Hanlin* 29 Mich. 476 ; *Kinney v. Robison* 52 Mich. 389. But if it were otherwise as a rule, the defense is not available in this case ; for the bill in equity, as this Court determined, made out no case for relief, and the Court would have granted none, even on a default. It was not a case for equity at all.

The principal question on the trial of this cause in the circuit court was whether the residuary legatee was entitled to set off against the legacy to the plaintiff a sum which he had paid as the amount of a mortgage upon the plaintiff's homestead. The homestead had been purchased for the plaintiff by her father in the manner to be shortly stated, and the mortgage was upon it at the time of the purchase. Whether the father had undertaken for the payment of the mortgage was, after his death, a question between these parties ; the son admitting that, if such were the case, he, as residuary legatee, must pay it. It was finally paid by the husband of the plaintiff, and the amount refunded to him by the residuary legatee, but with reservation, as he claims, of a right to inquire afterwards into his obligation to make payment.

It is now contended on behalf of the defense that the mortgage did not constitute a valid claim against the estate of Gilbert Hatheway, because it had never been proved and allowed by commissioners or in the probate court, as provided by statute, and the time for proving and allowing it had gone by. This contention would seem to be sufficiently answered by the cases in which it has been decided that where the executor gives bond as residuary legatee, the claims against the estate are not to be proved in the customary way. *Probate Judge v. Abbott* 50 Mich. 278, 479. But if it were otherwise it would be of no moment in this case. No such question was raised between the parties before the plaintiff's husband paid the mortgage, or before the amount was refunded

to him; but it was conceded that if the testator had assumed the payment of the mortgage the residuary legatee should pay it. Upon that concession he must stand now.

The assumption of payment by Gilbert Hatheway, if there was one, was very circuitous and indirect. It appears by the evidence that Mr. and Mrs. Wheeler were married in August, 1871. In the May preceding, Mr. Wheeler received from Gilbert Hatheway the following letter:

"NEW BALTIMORE, MACOMB COUNTY, MICH., May 5th, 1871. *Mr. Adolph Wheeler*—DEAR SIR : I returned home late last evening. Belle very soon read me the business portion of your letter, and I will here first say I intended to have written previous to this, in reference to you and her engagement, but various matters prevented, and only time now to say on that point, that Belle always talks freely with me, and if all did not meet my approval you would have been informed previous to this.

As to the house and premises, if it suits you and her, there is no need of my seeing it. My money, however, is nearly all employed, as business men usually think best to keep it. I, however, have this day written Moore, Foote & Co., Detroit, to send you their cheque for $500, payable at the bank in Detroit to your order. This you doubtless can get cash for in Adrian. Then make the best bargain you can for the house and premises; pay $500 cash down; $2500, if you can't get the property no less, to be paid about the middle of June, and $2500 to be paid on the mortgage at any time within one year, with interest on this $2500 from the time the seller moves out of the house. He should not ask interest while he occupies the premises. This last $2500, I presume, would suit me to pay in the fall; but in making bargains of this kind usually prefer all the time possible, as it generally results, if I pay before the time expires, the whole or part of accrued interest will be discounted. If you can bargain, not varying much from the above, do so; make the agreement in the name of Appleton Hubbard as your friend, who agrees to buy and pay as aforesaid,—the $500 paid down should satisfy Mr. Hardy that the balance will be surely paid as agreed—and deed to be given to Appleton Hubbard on payment of all but the last $2500, and subject to the same. It may be so that I can pay the whole by August as well as of later times. This Hubbard resides in Massachusetts. I buy tax titles, etc., in his name; have full power of attorney

from him and from his wife to convey real estate. In this way the curious at present will not be gratified, and I needn't visit Adrian. Will try and see you in Detroit when on your way.                                        GILBERT HATHEWAY.

P. S. If there is insurance on the house the seller should transfer the same. This, if talked about before the bargain is fully completed, the seller usually transfers without any money being paid him by the buyer therefor. The agreement can be made to the effect that Mr. Hardy agrees to sell Appleton Hubbard for the price you and he agrees on, describing the property, and that he and his wife will deed, etc., etc., being paid all but the last payment of $2500 and interest, and that $500 have this day been paid Mr. Hardy towards the consideration to be paid."

After the receipt of the foregoing letter Wheeler saw Mr. Hardy and made purchase of the place, and an agreement of purchase was drawn as between Mr. Hardy of the one part, and Appleton Hubbard of the other, which Hardy signed. Mr. Wheeler also received, in a letter purporting to come from Moore, Foote & Co., on account of Gilbert Hatheway, the sum of $500, which was paid to Hardy on the agreement. The agreement was then sent to Gilbert Hatheway, and the following letter received in response:

"NEW BALTIMORE, MACOMB Co., MICH., May 11, 1871.

*Mr. Adolph Wheeler, Adrian, Mich.*—DEAR SIR: Yours of 10th received, with the agreement, and as you intend to be in Detroit next Monday, I return the agreement, as I think there should be inserted in both agreements the foling: ' On or before May 1st, 1872,' between the word 'paid' and the word 'with', on first page 10th line, of ours, and on 11th line on the other agreement, very close to the written part of each agreement where I have marked with the pencil thus ' X.' By such interlineation I have the right to pay at any time previous to May 1st, 1872, and they cannot call for it until that time. If the mortgage by its terms is not payable until about that time, then no need to have the interlineation put in; or if from any talk you have had with Mr. Hardy, it is not best to say anything more to him about the agreement, all well as it is.

Please bring the agreement with you to Detroit, and can there decide about sending that to Mr. Hubbard to sign per-

sonally, and mail to you at New York city, and you then mail one to Mr. Hardy, etc.

And please ascertain the date of the mortgage to Mary Cutler, the amount, and where payable, with rate of interest.

Thus much oblige, in haste, yours truly,

GILBERT HATHEWAY."

The agreement was subsequently returned to Mr. Wheeler, duly signed by Appleton Hubbard as purchaser, and Mr. Wheeler also subsequently received the sum of two thousand five hundred dollars by mail, purporting to come from Moore, Foote & Co., on account of Gilbert Hatheway. This also was paid to Hardy on the agreement, and completed payment for the place with the exception of the sum of two thousand five. hundred dollars payable on the Mary Cutler mortgage. Hardy deeded to Hubbard, subject to the mortgage, June 15, 1871, and Hubbard and wife by Gilbert Hatheway, as attorney in fact, deeded to the plaintiff, July 17, 1871. This last deed contains a covenant of warranty and of freedom from incumbrances "except a $2500 mortgage which said Appleton Hubbard is to pay."

These are the material facts in the case which concern the liability of Gilbert Hatheway to pay off the mortgage. They leave, as we think, no question that Gilbert Hatheway intended to pay the Cutler mortgage himself and vest in his daughter a homestead free of incumbrance. But he intended to do this as a matter of gift; and if he failed to go far enough to make himself legally chargeable with the payment of the mortgage, James S. P. Hatheway and his sureties, who have only undertaken for the payment of debts and legacies, would not be compellable to complete the intended but still inchoate gift by causing the mortgage to be paid off.

The contention of the defense, in substance, is that Gilbert Hatheway never undertook for the payment of the Cutler mortgage. What he intended to do must be gathered from what he did; and what he did was to procure Appleton Hubbard to assume its payment. Why he did this is perhaps not important, but it may have been because Hubbard was

under pecuniary or other obligations to him which would by such payment be discharged. The defense offered to go into evidence of the relations between Gilbert Hatheway and Hubbard, by way of explaining this transaction, but were not permitted to do so, and one of the errors relied on in the case is the exclusion of evidence on this subject. But without such evidence the defendants contend that all that appears is that Gilbert Hatheway procured Hubbard to promise the payment of the mortgage : he made no promise himself.

On this branch of the case I shall speak for my brethren and express their views : it not being so clear to me as it is to them that Gilbert Hatheway ever became liable for the mortgage debt, though I agree that he clearly intended to pay it.

When Gilbert Hatheway, intending to purchase a homestead for his daughter, told Mr. Wheeler to "make the best bargain you can for the house and premises," and particularized the terms of payment he should agree to, he in effect made Mr. Wheeler his agent for the purpose. When he directed him to have the contract of purchase made in the name of "Appleton Hubbard, as your friend, who agrees to buy and pay as aforesaid," adding "it may be that I can pay by August as well as of later times," and explaining that " this Hubbard lives in Massachusetts , I buy tax titles, etc., in his name ; have full power of attorney from him and from his wife to convey real estate. In this way the curious at present will not be gratified, and I needn't visit Adrian ;"— Mr. Wheeler and the plaintiff had a right to understand from all this that Mr. Hatheway was using the name of Hubbard, not as that of a party who was in fact to make payment, but only for his own convenience, and for reasons personal to himself. Hubbard was in fact, as he was presented to them, a species of lay figure in the case, whose introduction would baffle the curious, while at the same time it would cause no inconvenience, since Hatheway, by means of the power of attorney, could make conveyance at any time without the necessity for a resort to the nominal principal. But the pay-ment, in which the interest of Wheeler and the plaintiff cen-

ered, was not left to be made by this to them unknown man, but by Hatheway himself, whose ability they knew to be ample, and who, while naming early times for payment, intimated a probability that he could pay still earlier. In all this there was a plain assumption that Hatheway and not Hubbard was principal in the transaction; that the name of the latter was merely borrowed for the occasion, and that his nominal undertaking was the real undertaking of Hatheway. This being so, it was immaterial what the real relations between Hatheway and Hubbard were. The plaintiff and Wheeler were not concerned with them, and it would have been an impertinence on their part to have insisted on inquiring into them.

If this view is correct it must end the case, for James S. P. Hatheway has then only paid what, under his bond as residuary legatee, he was bound to pay. But there is another view which is perhaps equally conclusive. The following special question was put to the jury: "Did James S. P. Hatheway, at and during the negotiation ending in the payment by him of the $2750 mortgage, reserve and claim the right to afterwards examine and see if it was a legal claim against the estate of his father?" The answer returned was in the negative. If no proper evidence was excluded, and no error committed in the submission of this branch of the case to the jury, the answer must be conclusive. The case would then be one of the voluntary payment of a claim which was made on strong grounds of apparent right; and a payment made voluntarily under such circumstances cannot be recovered back. No assumpsit which will support an action or a set-off can arise upon a transaction which from its very nature is a finality, unless it has been brought about by fraud, or has been entered into under some such misapprehension of the party's rights as will deprive it of the conclusiveness it would otherwise possess.

But in this case the defense insist that the payment is not binding because it was made under a misapprehension of facts on the part of James S. P. Hatheway, brought about by the failure of Mr. Wheeler to make full disclosure when he was

called upon to do so. It appears that after the death of her father the plaintiff by letter called the attention of James S. P. Hatheway to the mortgage, and he replied as follows:

"NEW BALTIMORE, February 14th, 1872.

DEAR SISTER: Yours in relation to mortgage is at hand; in reply, will say that unless there is writing signed by father, that he agreed to pay the mortgage, the estate is not holden for it; or, in other words, if the place belongs to the estate, of course then I will have to pay the mortgage for the benefit of the estate, or lose what has been paid therefor. Therefore you can readily see the situation of it. No doubt but what father would have paid the mortgage if he had lived, but now it changes all things, except when his name is signed by him, agreeing to carry out certain things.

When I see you, I can explain more fully. Father's estate is in very bad shape. Have not been able to attend to my business much of any since his death. I find a great many unsettled matters, the most of them against the estate, where he had drawn money upon them, the last three years of his life. Can't as yet find any more than property enough to pay the legacies, and am not yet sure of that. I have been away most of the time since my last writing looking up his business.

Hoping this will be satisfactory until I see you, I will bid you good morning.                    Haste.                    JAMES."

Mr. Wheeler testified that in response to this letter he visited the writer, taking with him the deed from Gilbert Hatheway to his daughter, and those letters instructing him to purchase the place. "In this interview I told him that I called to see him in relation to the mortgage, and handed him the deed to look at. He looked the deed over all through; then I read him all that portion of the letters instructing me to buy the place. During the reading of the letters he said: ' That sounds like father,' and when I finished reading the letters he made no denial of liabilities. He said there was a number of claims presented against the estate that he knew nothing about, that had taken all the available money on hand; and that if he didn't get around to pay the mortgage when wanted, for me to take it up, and he would see I had my pay from the estate. That was the

language. I then went home. After I got home I wrote him about the matter."

The following is the subsequent correspondence:

"DEAR BROTHER: Mr. Hardy informed me recently that Mary Cutler requires the payment of the mortgage she holds against our place by the 15th or 20th of this month, by the 20th say. I take the first opportunity of writing you in regard to it.

Will it be convenient for you to pay it on the 20th? If not, what disposition shall I make of it? My money is so invested it will be impossible for me to take it up.

If you can't make the money by the 20th, please write me at once what to do, and oblige

Yours, very truly. ADOLPH WHEELER.
May 1, 1872."

"MARION, May 9th, 1872.

BROTHER WHEELER: On my arrival here I find a letter from Eve, stating what you had written in reference to the mortgage. All I can say now is, I am expecting to get some money while I am east, and also have some demands to pay against the estate, and if I have enough left on my return will immediately pay the mortgage; but cannot tell how matters will shape. For fear anything may happen that I cannot take care of it at the time you state, you had better take it up and I will pay you as soon as I get the money to pay it with.

Yours, in haste. JAMES."

"NEW BALTIMORE, July 25th, 1872.

BROTHER WHEELER: Please send me the amount due upon the mortgage, which you think belongs to me to pay, and I will send a check for the same; or, if you are coming this way, would prefer to arrange it here.

If not coming, please send the deed which you showed me here, as I would like to look it over again, and will return it to you. By so doing you will oblige JAMES."

After receiving the letter of May 9th, Mr. Wheeler paid and took an assignment of the Cutler mortgage, and on August 2, 1872, he received from James S. P. Hatheway the amount he had so paid. The important fact which Wheeler failed to disclose in the interview he had with his brother-in-law was that Hubbard had in person signed the contract of purchase. Without that fact being known, it is said James

S. P. Hatheway might naturally suppose that Mr. Hubbard was in no way personally connected with the transaction; whereas in truth he had done what Gilbert Hatheway had not,—promised in writing to assume the mortgage. Had James S. P. Hatheway known this, it is thought not likely he would thus have made payment.

How that may be we cannot know. It does not appear that he inquired for the contract, though he knew one had been made. It does not appear that on the other side there was any intention to deceive or mislead. Hubbard's connection with the transaction appeared on the deed itself; and the parties might well have thought, after the deed had been given, that it was immaterial how the contract was signed which was superseded by it. But why Mr. Wheeler was more bound to know that the contract was important to be seen by James S. P. Hatheway than the latter was to inquire into it, is not apparent. The Court does not think he was. James S. P. Hatheway made sufficient investigation to satisfy himself, apparently, that his father directed the purchase of the homestead as a gift to the plaintiff, and that the deed which the father gave as attorney contained a provision evidently intended to secure to the plaintiff protection against this mortgage. Having looked so far into the facts, he directed the mortgage to be paid, and as his action in so doing was entirely voluntary, he cannot now reconsider and have it annulled. The proposed set-off cannot therefore be allowed.

In the elaborate brief presented for the defense in this case, and followed by oral argument, other points are made and argued with much ingenuity, but we have now examined all we think it important to discuss in this opinion. In those not discussed we all agree that no error appears.

The judgment must be affirmed.

CAMPBELL and SHERWOOD, JJ. concurred.