WILLIAM H. THOMPSON, APPELLEE, V. LYDIA E. POPE, EX-
ECUTRIX, APPELLANT.

FILED OCTOBER 18, 1906. No. 14,566.

1. **Executors: Appeal: Bond.** An executor and residuary legatee who
has given a bond to pay the debts and legacies of the testator
under section 5030, Ann. St., may appeal from a judgment of the
county court allowing a claim against the estate without giving
an appeal bond.

2. **Cases Distinguished.** *Buel v. Dickey*, 9 Neb. 285, and *Herdlitchka
v. Foss*, 2 Neb. (Unof.) 428, distinguished.

APPEAL from the district court for Merrick county:
CONRAD HOLLENBECK, JUDGE. *Reversed.*

*Patterson & Patterson, F. Dolezal* and *J. J. Sullivan,*
for appellant.

*C. G. Ryan* and *Martin & Ayres, contra.*

LETTON, J.

James H. Pope died in 1904 in Merrick county, Ne-
braska, leaving a last will and testament which was duly
probated in that county. In the will, his wife, Lydia E.
Pope, was named as executrix and also as the residuary
legatee of the estate. Upon the probate of the will she
gave a bond as executrix and residuary legatee to pay the
debts and legacies of the estate under the provisions of
section 5030, Ann. St., which bond was duly approved.
A number of claims were filed against the estate, one
being that of William H. Thompson, the appellee, for
legal services rendered the estate. The claim was
objected to by the executrix, she alleging that such serv-
ices had been rendered by the claimant for her person-
ally and were not proper matters of charge against the
estate of James H. Pope. After a hearing the county
court found for the claimant and allowed the claim for
the sum of $1,047.99 against the estate. From this judg-

ment the executrix appealed to the district court, but did not file any bond upon such appeal, relying upon the provisions of sections 4825 and 5190, Ann. St. Section 4825 provides generally for appeals from a probate court in all matters of probate jurisdiction, and further provides that an executor, administrator, guardian or guardian *ad litem* shall not be required to enter into bond in order to enable him to appeal. Section 5190 provides as follows: "Every executor or administrator who may have given bond in this state with surety agreeable to law, shall be authorized in all cases of appeal from one court to another, by him made, to prosecute the same without filing an appeal bond. Such appeal to be prosecuted to the district court as appeals are now taken from courts of justices of the peace." The question to determine is whether a residuary legatee who has given the bond prescribed by section 5030 to pay the debts and legacies, instead of the bond provided for in section 5029 —which applies to executors generally, and is conditioned in substance that they shall return an inventory of the estate, shall administer the same according to law and out of the same pay the debts and legacies, render an account within one year, and perform all orders and decrees of the probate court—may appeal from the allowance of a claim against the estate by the county court without executing and filing an appeal bond.

The general rule with reference to giving of appeal bonds by executors and administrators is that wherever the judgment which is appealed from affects only the assets of the decedent in his hands for administration, no appeal bond is required, for the giving of a bond might render the executor personally liable to an amount greater than the assets of the estate in his possession; but that where an executor or administrator is in a position in which a personal judgment or decree can be rendered against him and in which he may or ought to be responsible out of his own funds, then he should be required to give an appeal bond the same as other persons. *Wade*

*v. American Colonization Society,* 4 S. & M. (Miss.) 670; *Pugh's Exrs. v. Jones,* 6 Leigh (Va.), 299; *Erskine v. Henry,* 6 Leigh (Va.), 378; *Pugh v. Ottenkirk,* 3 Watts & Serg. (Pa.) 170. In this case the court say: "It is the character of the suit that determines this right (to appeal without bond), and that does not depend on the mere naming the party as executor or administrator in the process or declaration, but upon the cause of action as developed in the pleadings, and whether the recovery is sought in a representative or individual capacity." In *Rhea v. Brown,* 4 Neb. (Unof.) 461, it is said: "It may well be said that section 44, ch. 20, and section 234, ch. 23, Comp. St., rightly construed mean only that executors, administrators and guardians are not required to give bond when they appeal in their representative capacities, and that when they appeal in their personal capacities, from judgments rendered against them personally, they should give bond the same as other litigants." It is contended by the appellee that an executor and residuary legatee who has given a bond to pay the debts and legacies becomes vested with a perfect title to the entire estate of the deceased, free from any claim, lien or charge of creditors and legatees; that the estate of the deceased becomes virtually administered upon by the giving of the bond, and that the executor becomes personally liable for all the debts. It is argued that this being so the claim is in effect against him personally, and that he is no more entitled to an appeal without bond than any other litigant. On the other hand, it is contended that the representative character of the executor does not cease with the giving of a bond to pay the debts and legacies as residuary legatee; that the estate is not thereby administered, but that the only effect of the bond is to relieve the executor from the filing of an inventory or accounting for the estate, and that the ordinary course of administration, so far as the filing and allowance of claims is concerned and the closing of the estate, proceeds as in other cases.

In this connection it is important to consider the statutory provisions with reference to the rights of creditors in the estate of a deceased person. Section 4988, Ann. St., provides: "Every person of full age and sound mind, being seized in his own right of any lands, or any right thereto, or entitled to any interest therein descendable to his heirs, may devise and dispose of the same by his last will and testament in writing; all such estates not disposed of by will shall descend as the estate of an intestate, being chargeable in both cases with the payment of all debts." Section 5017 is as follows: "All the estate of the testator, real and personal, shall be liable to be disposed of for the payment of his debts and the expenses of administering his estate." By succeeding sections it is provided in substance that the estate given by the will to any devisees or legatees shall be held liable to the payment of the debts and expenses, in proportion to the amount of the devise or bequest; that devisees or legatees who shall, with the consent of the executor, have taken possession of the estate before such liability is settled, shall hold the same subject thereto and shall be held to contribute for the payment of debts and expenses. The statute further provides that if the personal estate not disposed of by last will shall amount to more than $500, and more than certain allowances to the widow and children of the deceased, the same shall be applied to the payment of debts, funeral expenses and expenses of administration, and that the residue, if any, shall be distributed among the heirs. It will be seen, therefore, that as to both the real estate and the personal property of the deceased, the statute especially provides that the estate is charged with and subject to the claims of creditors.

The view has been taken that the giving of a bond to pay the debts and legacies by an executor and residuary legatee administers the estate; that the bond is substituted for the assets, and that creditors and legatees thereafter cannot follow the estate, but are confined to a remedy upon the bond. It is said by the appellee that

this question has already been determined in this state
in the cases of *Buel v. Dickey*, 9 Neb. 285, and *Herd-
litchka v. Foss*, 2 Neb. (Unof.) 428. *Buel v. Dickey* was
an action upon the bond of a residuary legatee, and it
was claimed by him that unless assets were shown to have
come into his hands he was not liable upon the bond, but
it was held that the bond was conclusive evidence of
assets with which to meet the debts and legacies of the
testator, citing *Jones v. Richardson*, 5 Met. (Mass.)
247, and *Colwell v. Alger*, 5 Gray (Mass.), 67. It is
true it is said in the opinion that by giving this bond he
"deprived the court of all control over his management
of the property, which, whether much or little, prac-
tically became his own to dispose of as he saw fit. The
probate court, it is true, could fix a time within which the
payment of debts and legacies should be made, and order
it done; but beyond this the court could not go, except
upon proper application to authorize forcible collection
by suit on the bond," but this was unnecessary to the
decision and is mere dictum. In *Herdlitchka v. Foss*, 2
Neb. (Unof.) 428, two points were decided: First, that
the legacies in controversy were made a charge upon
the land of the deceased; and, second, that the bond
which was given did not comply with the provisions of
the statute with reference to the giving of bonds by an
executor and residuary legatee under section 5030, Ann.
St. There was an obiter remark that when a bond under
this section is given the bond takes the place of the
property, so far as creditors and other legatees are con-
cerned, citing *Buel v. Dickey, supra,* but the point was
not in issue in this case and was not decided. The ques-
tion, then, is of first impression in this state.

In order to a proper determination of the question in-
volved, a consideration of the history of the statutory pro-
visions is necessary. Our statutes with reference to the
collection and administration of the estates of deceased
persons derive their origin in the first place from Massa-
chusetts. It has been said that they have come to us by

way of New Hampshire, Michigan and Wisconsin, but, whether this be so or not, the fact is that, while modifications and changes have been made in matters of procedure, a number of the most important provisions are identical with laws of Massachusetts, which date back for many years. The first statute with reference to wills in the colony of Massachusetts Bay was passed in 1649. This act provided penalties for neglect upon the part of executors to make probate of wills in the county court or to .file a true inventory of the deceased's estate, and against any one alienating or embezzling any lands or goods of the deceased, and provided for the administration of intestate estates. In 1685, as an addition to this act, it was provided that the court might summon any executor who had offered a will for probate, requiring him to give bond with sufficient sureties for paying all debts or legacies, or to make and exhibit unto the court upon oath a just and true inventory of the estate of the deceased, and provided penalties for refusal or neglect. Ancient Charters and Laws of Massachusetts Bay, p. 204. A later statute, 2 Anne (1703), Ancient Charters and Laws, *supra*, p. 377, reenacted the foregoing provisions and prescribed other matters of procedure in case of defaulting executors, and a still later law imposed penalties for the failure to file inventory. 12 Geo. II (1738), Ancient Charters and Laws, *supra*, p. 518. The first Massachusetts case which has any bearing upon the question is *Gore v. Brazier*, 3 Mass. *523, *542, decided in 1807. A Massachusetts statute of 1783 provided that the real estate of any deceased person shall be liable to be taken by execution upon judgments recovered against executors or administrators for debts of the deceased, the same as in other cases. Another provision enacted that the real estate of which any person should die seized should be chargeable with all the debts of the deceased, and that an executor who is residuary legatee might give bond to pay the debts and legacies. The executor and residuary legatee of the estate of one Gill, who

had given bond to pay the debts and legacies, sold certain real estate belonging to the estate. Afterwards a creditor of the deceased recovered judgment against the estate and caused an execution to be levied on the real estate. The action was for a breach of the covenants in the deed made to the purchaser by the residuary legatee. It is said by Chief Justice Parsons: "The last objection that remains to be considered, is grounded on the probate bond given in this case for the payment of debts and legacies. And if the giving of this bond is in law a discharge of the testator's lands from a lien imposed upon them by the statute, the defendant must recover. But we are all of opinion that this bond is no discharge of the lien. Before the provincial statute of 1 and 2 Anne, ch. 5, all executors were bound to inventory and account for the testator's estate. This was necessary to furnish the creditors and legatees with evidence to charge them with waste, if any assets were embezzled or unaccounted for. When the legacies are specific, or to be ascertained without inventory or account, and the executor be the residuary legatee, if the legatees and creditors can be secured, there can be no occasion for an inventory or account. In this case that statute relieves the executor from this duty, on his giving bond with sureties to the judge of probate for the payment of the debts and legacies. * * * This lien remains in full force, and the benefit to be derived by a creditor or legatee from the bond is merely cumulative."

In 1819 *Thompson v. Brown,* 16 Mass. *172, was decided. The court held that a license to an executor and residuary legatee who had given bond to pay debts and legacies was void; that such an executor ought not to have a license to sell the real estate and discharge his obligations; that a license was unnecessary since he could convey a perfect title without it. It was said by Parker, C. J., speaking of the bond given by the residuary legatee: "The bond so given is the security intended by the statute for the creditors and legatees. * * * We think it clear that no executor, who is residuary devisee, and

has acquired a perfect title to the estate, by giving the bond required by law, for the payment of the debts and legacies, ought to have license to sell the real estate, to discharge his obligations. Nor is such license in any degree necessary; as an executor, so circumstanced, may sell without such license." The statement that the executor "acquired a perfect title to the estate," while in one sense true, was unnecessary to a decision of the case and has been the source of much confusion in later decisions.

Again, in 1827, in the case of *Clarke v. Tufts,* 5 Pick. (Mass.) 337, following the case of *Thompson v. Brown, supra,* the same judge writing the opinion said: "The legislature has made such bond a substitute for the estate of the deceased, so that there is no longer any lien upon the real or personal estate of the testator by his creditors, after the executors shall have conveyed the same to *bona fide* purchasers. Whether such creditors, having obtained judgment and execution against an executor who has given such bond, can levy upon the estate devised, before any conveyance of it, may be matter of inquiry in some future action." The doctrine of these cases, so far as they hold that the bond is substituted for the estate and the lien discharged, is apparently inconsistent with *Gore v. Brazier, supra,* and neither opinion cites that case. Yet, in view of the above query in *Clarke v. Tufts, supra,* it may be questioned whether Judge Parker intended his language to convey the meaning which has been ascribed to it.

In 1834 a commission which had been appointed to revise the statutes of Massachusetts reported to the legislature, and in this report embodied a statutory provision that the giving of a bond to pay the debts and legacies by the residuary legatee should not discharge the lien upon the real estate of the testator for the payment of his debts, except where sold to a *bona fide* purchaser. With reference to this new section the commissioners say in their report: "This section is new in terms; but it is in con-

firmation of the construction given by the supreme court
to the corresponding provision in the statute of 1788, ch.
24. See 3 Mass. *523, *542. The exception as to land
conveyed by the executor is not noticed in that case but
it may be necessary in order to enable the executor to pay
the debts and legacies according to the condition of his
bond. * * * When an administrator has sold a piece
of land belonging to the intestate for the payment of his
debts, that piece is forever discharged from the lien, al-
though the proceeds of the sale should be wasted, and
never applied to the payment of the debts. The creditors
in such a case have the remedy against the administra-
tor and his sureties. So in the case under consideration,
the land having been once lawfully appropriated for the
payment of the debts, ought to be forever discharged; and
the creditors should look for their remedy to the executor
and his sureties." The recommendation of the commis-
sion was embodied in the revised statutes of 1836 as sec-
tion 4, of ch. 63, so that since that time in Massachusetts
the statutory provision has been declaratory of the law
as announced in *Gore v. Brazier, supra.* The first case
arising after the passage of this act was *Jones v. Richard-
son,* 5 Met. (Mass.) 247, decided in 1842, wherein it is
said by Chief Justice Shaw: "Perhaps it may be said,
that by the express condition of the bond, the executor
and his sureties are bound to pay the debts and legacies;
that creditors or legatees have a remedy, in the name of
the judge of probate, on the bond; and that such is their
only remedy. But this is opposed, both by the statute
and by a long course of decisions." Later Massachusetts
cases, *Holden v. Fletcher,* 6 Cush. (Mass.) 235; *Alger v.
Colwell,* 2 Gray (Mass.), 404; *Colwell v. Alger,* 5 Gray
(Mass.), 67; *National Bank of Troy v. Stanton,* 116
Mass. 435; *Thayer v. Winchester,* 133 Mass. 447; *Jenkins
v. Wood,* 134 Mass. 115; *Jenkins v. Wood,* 140 Mass. 66;
*Collins v. Collins,* 140 Mass. 502, are in harmony with
*Gore v. Brazier, supra.* In *Collins v. Collins,* 140 Mass.
502, decided in 1885, Collins had made a will by which

he gave his wife, who was residuary legatee and executrix, a legacy of $500 in trust for his granddaughter, an infant. The executrix gave the statutory bond to pay the debts and legacies. She died without having paid the legacy, and the defendant was appointed administrator *de bonis non* with the will annexed, and gave the usual bond. The legacy not having been paid, the granddaughter sued the administrator *de bonis non* for its payment. The first defense relied on was that by the giving of the statutory bond the wife made the estate her own, and that it could not be followed into the defendant's hands by a legatee having no specific charge upon it. The court held that this defense could not be maintained, saying: "It is true that the bond made the executrix personally liable upon it to the extent of its penalty, but that is not sufficient to exonerate the estate unless the statutes provide that it shall have that effect. We find no such provision. On the contrary, it is expressly provided in the Pub. St. ch. 129, sec. 7, that the lien of creditors on the real estate shall be preserved, except on such part as shall be sold to a *bona fide* purchaser for value." It will be seen therefore that the supreme court of Massachusetts has finally returned to the sound basis of *Gore v. Brazier, supra,* and has apparently ignored the language in *Thompson v. Brown* and *Clarke v. Tufts, supra.*

In the state of Michigan, one of the first cases in which the proper construction of the statutory provisions under consideration was involved was *Hatheway v. Weeks,* 34 Mich. 237. This case was decided in 1876, and held, citing *Colwell v. Alger, supra,* that the giving of a bond as residuary legatee and executor to pay the debts and legacies conclusively admits assets, and that such executor by the giving of the bond became the absolute owner of the property of deceased. This case was followed in a series of cases arising out of the settlement of the estate of Gilbert Hatheway. See *McElroy v. Hatheway,* 34 Mich. 399; *Wheeler v. Hatheway,* 54 Mich. 547. These cases held in substance that by the giving of such a bond

the residuary legatee becomes the owner of the estate of
the deceased, that the property is discharged from any
liability for the debts of the deceased, and that the credi-
tors and legatees cannot look to the estate of the deceased
undisposed of in his hands, but must rely exclusively upon
him and his bondsmen for the payment of their claims.
In 1889, however, the question was reexamined in the case
of *Lafferty v. People's Savings Bank,* 76 Mich. 35, and
it was held by the court, two of the five judges of the
court dissenting, that the title of a residuary legatee is
not absolute, but is held subject to the payment of the
testator's debts; that upon his removal the title to the
property of the testator remaining undisposed of in his
hands reverts to the estate and becomes vested in the ad-
ministrator *de bonis non;* that he cannot be sued per-
sonally for a debt due from the testator, but only officially
as executor; that his authority to sell real estate belonging
to the estate is as executor, and not personally, and
that an estate is not regarded as administered until
the assets have been collected and applied as required by
law or the will of the testator, and that until fully ad-
ministered the probate court has jurisdiction in the mat-
ter of the proceedings. The opinion is lengthy and elab-
orate. It cites and examined the course of legislation
and litigation in Massachusetts upon the points involved.
In the dissenting opinion the argument is made that the
laws of Michigan are not identical with those of Massa-
chusetts, and that it is violating all the rules of decision
to override what has been considered the law of Michigan
and follow the decisions of another state, and that to
overrule the prior cases would be to throw the laws as
declared into confusion. The dissenting opinion further
points out differences in the method of probate adminis-
tration in Michigan from those prevailing in the state of
Massachusetts. From this resume it appears that the
courts of Massachusetts and Michigan now take the same
view of the effect of these statutes. In Wisconsin, how-

ever, the doctrine of *Thompson v. Brown, supra,* is still adhered to.   *Cole's Will,* 52 Wis. 591.

To give the law the effect contended for by the appellee would nullify the sections which make the estate of the deceased liable to the claims of creditors, and would substitute in many cases the uncertainty and vexation of an action upon a bond for the certainty of a recourse to the estate of the deceased remaining undisposed of in the hands of the executor.   Such construction, to our mind, would be unfair to creditors.   In many, and, perhaps, in most instances credit is extended upon the faith of the estate of the debtor, and with the expectation and reliance upon the part of the creditor that in case of death the property of the deceased will be subject to the payment of his just demands.   The idea that the giving of such a bond removes the liability of the assets of the estate to be subjected to the payment of the debts of the testator, and substitutes therefor the personal responsibility of the executor and his sureties to the amount of the penalty in the bond, finds no support in any statute, but seems, so far as the writer can ascertain, to have taken its origin in the opinion of Parker, C. J., in the case of *Thompson v. Brown, supra,* and this doctrine was promptly repudiated by the people of the state of Massachusetts upon the recommendation of the commissioners to revise the laws.   We are convinced that the reasoning of the later cases, *National Bank of Troy v. Stanton, supra,* and *Collins v. Collins, supra,* and *Lafferty v. Peoples Savings Bank, supra,* is much to be preferred to that of Chief Justice Parker or to the implications in the earlier Michigan cases.   The giving of a bond to pay the debts and legacies by an executor and residuary legatee, therefore, is merely cumulative and adds the security of the bond to the provisions already made for the preservation of the rights of creditors.   It is true, as was said in *Buel v. Dickey, supra,* that by the giving of this bond the executor relieved himself of the duty of returning an inventory of the estate and that the property practically became his own to dis-

pose of as he saw fit, but this does not close the administration. The condition is similar to one of ordinary administration wherein the executor has been ordered by the probate court to sell sufficient of the personal property to pay the debts. The property that he disposes of for that purpose carries with it a perfect title, but that which remains in his hands is still subject to be sold for the debts of the estate. And so with an executor who has given bond to pay the debts and legacies. If he fail to do so and there remain in his hands, undisposed of, assets of the estate, the creditor may have the same remedies against him as in other cases by citation and removal and the appointment of an administrator *de bonis non,* and may have the remaining assets applied in satisfaction of his debt. Hence, when such an executor appeals from the allowance of a claim he appeals in his representative capacity as executor, even though he has a direct personal interest in reducing the amount of the claims against the estate in order that the mass of his residuary estate may be larger. In taking an ordinary executor's bond, the county court should look to the assets and fix the penalty at an amount sufficient to guarantee a faithful administration of the trust and to account for the proceeds of the estate, but, in case of the bond of an executor and residuary legatee, the interests of the creditors and legatees are to be looked to and the bond should be ample to cover all probable claims against the estate. It is true the bond is an admission of assets, but it may be questioned whether it is an admission of assets to a greater amount than the penalty in the bond.

Upon the whole case, we are of opinion that an executor and residuary legatee who has given bond under the provisions of section 5030, Ann. St., is absolved from the necessity of giving an appeal bond in cases which involve a contest upon claims against the estate. The judgment of the district court dismissing the appeal is therefore erroneous, and it is reversed and the cause remanded for further proceedings.

REVERSED.